PROVIDENCE STEAM-ENGINE CO. v. HATHAWAY MANUF'G CO.

(Circuit Court, D. Massachusetts. March 9, 1897.)

No. 780.

1. REFORMATION OF CONTRACT—MISTAKE—ESTOPPEL.

Where a written contract for the sale of an engine contained a clause guarantying that the engine should develop a certain horse power at a boiler pressure of 100 pounds, the fact that the seller has brought an action at law to recover the balance of the purchase price, stating the warranty as it appears in the written contract, does not preclude him from maintaining a suit in equity to reform the contract upon the ground that the pressure at which the required horse power was to be developed was by mistake stated at 100 pounds instead of 130 pounds, as the effect of such a change will not be to increase the complainant's own right, but merely to deprive defendant of the right to maintain a cross action brought by him upon the warranty as stated by plaintiff in his action at law.

2. SAME—PLEADING.

In a suit in equity to reform a written contract on the ground of mistake, the allegations of the bill that the terms of the contract were agreed upon, that they were to be put in writing by plaintiff, and that both plaintiff and defendant executed the writing under the mistaken impression that it did conform to the prior verbal agreement, fully meet the objection that the bill states merely a case of unilateral mistake in making a proposition.

3. SAME.

The lapse of nearly three years from the making of an error in a contract to the filing of a bill to reform the contract, in the absence of a substantial change of condition, is not sufficient, under the circumstances alleged in the bill, to bar the plaintiff's right of reformation.

Williams & Copeland, for complainant.
Charles W. Clifford, for defendant.

BROWN, District Judge. This is a suit in equity, in which the plaintiff seeks to reform, upon the ground of accident and mistake, a clause contained in a written contract for the furnishing by the plaintiff to the defendant of certain engines and equipments. The clause is as follows:

"We guaranty the compound engine to develop a horse power when driving its full load of 1,100 indicated horse power with sixteen (16) pounds of water evaporated into dry steam at the boiler pressure of 100 pounds to the square inch, and we also guaranty that the same engine will develop 1,100 indicated horse power with good economy with a boiler pressure of 125 pounds to the square inch."

The bill avers: That the terms of the contract were "verbally" agreed upon by agents of the plaintiff and defendant, and that it was understood and agreed that there should be incorporated into the contract a guaranty in the form above set forth, excepting that the figures 130 instead of 100 should be inserted therein. That the plaintiff was requested by the defendant to put into writing the terms thereof. That, in accordance with said request, the plaintiff wrote and sent to the defendant on August 17, 1892, a "proposition" (as it is termed in the bill) correctly embodying the terms agreed upon. That on August 22, 1892, the defendant wrote the plaintiff as follows: "Have never yet received your specifications for Hathaway engine as agreed with you some time ago. Neither have I received plan of engine foundation. It is important that we have these at once." That thereupon the plaintiff ordered its typewriter to make a new copy of said "proposition," but that by accident and mistake in making said copy the typewriter substituted the figures 100 for the figures 130. The plaintiff, supposing the copy made by the typewriter to be correct, and to conform to the "verbal" agreement, by accident and mistake caused the same to be signed, and forwarded to the defendant. "The defendant corporation, by its treasurer J. F. Knowles, also supposing, as the plaintiff believes, and so alleges," that said "proposition" conformed to the verbal agreement, and read 130 instead of 100, by accident and mistake signed and accepted said proposition so sent in the form so written. That thereafter the plaintiff proceeded to build, and the defendant to prepare for the location and operation of, said engines, upon the basis and understanding that said engines were to be of such character as to "develop a horse power, when driving its full load of 1,100 indicated horse power with sixteen pounds of water evaporated into dry steam at the boiler pressure of 130 pounds to the square inch," etc. That after the completion of said contract in accordance with the agreed terms, and in accordance with the terms of what the parties supposed to be the written contract, differences arose between the plaintiff and defendant other than those relating to the said guaranty, and on June 24, 1894, plaintiff brought an action at law in this court for the balance of money due under the contract; and as part of its pleadings set forth in its declaration a copy of the contract, signed by the defendant, still supposing that the guaranty read 130, instead of 100, pounds. That the error was not discovered by plaintiff until after the bringing of its action

79 F.—33

at law, nor was any claim for breach of said guaranty made by the defendant until long after the bringing of plaintiff's suit. On or about September 1, 1894, defendant brought a cross action against plaintiff in a state court of Massachusetts, which action was afterwards transferred to this court, where both actions are now pending. The subject-matter of this cross action is not definitely set forth in the bill, though defendant's brief assumes that it involves the clause in question in this suit. On August 12, 1895, plaintiff communicated the fact of its discovery of the error, and requested defendant to rectify it, and after this time plaintiff and defendant were engaged in negotiations for a settlement, upon the failure of which, on or about November 14, 1895, the plaintiff filed in the supreme judicial court for the county of Bristol, in the state of Massachusetts, a bill in equity for the reformation of the contract. A demurrer for want of jurisdiction while said suits at law were pending in this court was sustained in the state court on April 13, 1896, whereupon, on July 30, 1896, plaintiff filed his present bill. The defendant corporation demurs to the bill, assigning as special causes: (1) Laches. (2) The pendency in this court of a prior action at law, wherein the complainant seeks to enforce its rights at law upon the contract in its original form; wherefore the complainant, seeking to have a reformation of the contract upon which his suit is now pending, should not be heard in this court sitting as a court of equity.

The second ground of demurrer will be first considered, since it bears upon the defense of laches. The defendant's position is thus stated upon its brief: "If it appears by the plaintiff's bill that it is asserting its legal rights upon the contract against the defendant, it will not be heard in a court of equity asking relief from the legal rights of the defendant upon the same contract." Both as a general proposition and as a proposition applicable to this case, this is erroneous. The same contract may give to the parties separate and distinct rights, and separate and distinct actions may be brought upon different parts of the same contract. The argument of the defendant upon this point treats the contract as entire and indivisible, and fails to distinguish the right affirmatively asserted by the plaintiff at law from the right involved in the present bill. The clause in question is a warranty. Whether it is reformed or not, the plaintiff's claim upon the rest of the contract is the same; its claim for damages is the same. In its present form, the clause guarantees that the required horse power shall be developed at 100 pounds pressure. This warranty is larger than that which complainant avers was agreed upon; i. e. the development of the required horse power at 130 pounds pressure. But the plaintiff's right does not rest upon this clause, whatever its proper form. The clause is solely for the defendant's benefit. By stating in the action at law the larger warranty, plaintiff gains nothing, and does not seek to increase its affirmative rights. The present bill seeks not to increase plaintiff's right, but merely to deprive the defendant of an independent counterclaim, assertable either by cross action or by recoupment (a substitute for a cross action permissible to

avoid circuity of action).    Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696; Railroad Co. v. Smith, 21 Wall. 261.    Even were it a condition precedent to recovery in the action at law that plaintiff should prove its machine equal to the requirements of the larger warranty, and capable of doing the required work at 100 pounds pressure, there would still be no inconsistency between the claim made in the action at law that plaintiff is entitled to the balance of the contract price under the contract in its present form, and the claim that it is also entitled under the contract in the form to which by reformation plaintiff seeks to bring it, since the former claim, instead of being inconsistent with the latter, includes it. But in view of the allegations that no claim was made for breach of the warranty in this respect until after June 24, 1894, and that the work was completed according to the terms orally agreed upon, the defendant's right, so far as now appears, is merely a claim upon the warranty as a collateral undertaking of plaintiff to respond in damages for a deficiency in the machine to perform the required work.    The fact that defendant has brought a cross action indicates that it has correctly interpreted its right as distinct from that upon which the plaintiff proceeds in the action at law.    There is neither inconsistency nor inequity in the conduct of plaintiff in asserting affirmative rights under parts of the contract, and denying that under distinct parts of the same contract the defendant is entitled to a cross action or a defense by way of recoupment.    Nor does there appear to be force in the suggestion that plaintiff should be willing to surrender its rights at law as a condition for asking relief from defendant's counterclaim.    The principle that equity will not act partially, but will take full and final jurisdiction of the controversy, is inapplicable as an objection to the bill.    So far as now appears, the only controversy involving equitable considerations is upon the clause of warranty, a clause which defendant, and not plaintiff, may enforce.    If the defendant has equitable defenses to those parts of the contract upon which plaintiff bases its rights at law, they may possibly be matter for answer; but, as they do not appear in the bill, the existence of such defenses cannot be urged upon demurrer.    The same reasons which render it proper for a defendant to found a cross action or recoupment on a clause of warranty justify the plaintiff in bringing a bill merely for reformation of such a clause, without divesting itself of independent legal rights arising from separable parts of the contract. Should plaintiff proceed in its action at law, it would deprive the defendant of no rights, but rather confer upon it gratuitously an advantage in defense.    If such advantage is unconscionable, defendant must advance some other objection to being deprived of it than the fact that the plaintiff has inadvertently, or even negligently, misstated defendant's rights, and that the defendant has prepared its defense in reliance upon the misstatement.    The defendant's claim of a right to treat the bringing of a suit on the contract as written as a direct affirmance of its terms, and so to rely upon it in his cross action, and to prepare himself for litigation on that basis, is, upon the case stated in the bill, a claim of sub-

stantial right arising out of mere mistake,—a claim supported neither by equitable nor legal principles. It is to prevent the assertion of claims of this character that the equity of reformation exists. If the plaintiff is to be responsible to the defendant for a failure of the engine to perform more work than was contemplated by the parties, such responsibility must rest upon some more substantial foundation than the fact that in the action at law it mistakenly asserted the rights of the defendant, and that the defendant has gone to the trouble and expense of so framing its cross action or defense as to take advantage of the mistake.

In endeavoring to establish the defense of laches the defendant ignores material allegations of the bill. Even.were the document wherein the alleged mistake occurs a mere "proposition," as defendant contends, the allegation that the defendant by accident and mistake signed and accepted said proposition, supposing the warranty to be in the form which the bill seeks to establish, sufficiently sets forth a case of mutual mistake. But the bill does not justify the claim of the defendant that the document sent to defendant was a mere proposition. It states that the terms of the contract were verbally agreed upon * * * as set forth in 'Exhibit A, and that it was understood and agreed that there should be incorporated into the contract a guaranty in the form contained in Exhibit A, and that the plaintiff was requested to put into writing the terms thereof. The plaintiff's somewhat inaccurate use of the word "proposition" cannot fairly be taken to contradict the prior statement that the terms were agreed upon, and were to be put in writing. A proper construction, in view of all the allegations of the bill, is that the plaintiff made no new proposition, but merely adopted, in writing out the terms of the prior agreement, the convenient and common form of a letter of proposal containing all the terms of the agreement, thus substantially complying with the alleged request of the defendant that plaintiff should write out its terms, since a mere acceptance by the defendant, such as is affixed to Exhibit C, would complete the written evidence of the prior agreement. The defendant construes the allegation of the bill that "the terms of the contract were verbally agreed upon * * * as set forth in * * * the copy marked 'A' " as meaning merely that the specifications were agreed upon, and refers in support of this construction to the language of defendant's letter, Exhibit B. This is a premature argument on the facts of the case, rather than an argument upon the question of the proper meaning of the language of the bill. The allegations that the terms of the contract were agreed upon, that they were to be put in writing by plaintiff, that both plaintiff and defendant executed the writing under the mistaken impression that it did conform to the prior verbal agreement, fully meet the objection that the bill states merely a case of unilateral mistake in making a proposition. The arguments based upon the character of the mistake, the supposed injurious effect upon the defendant's rights, the change of conditions resulting from the litigation at law, do not sufficiently meet the case made by the bill. The change in the relations of the par-

ties which will render it inequitable to reform a contract, and serve as a basis for the defense of laches, must be substantial, so that hardship will result from disturbing the new relations which have grown up through acquiescence or delay. Galliher v. Cadwell, 145 U. S. 373, 12 Sup. Ct. 873. Assuming, for the purposes of demurrer, the truth of the allegations of the bill, the sole hardship apparent in the present case is that of depriving the defendant of the technical advantage which he now has, or hereafter may have, in setting up in a court of law an inequitable claim. The lapse of time from the making of the error, on August 23, 1893, to the filing of the present bill, on July 30, 1896, in the absence of a substantial change of conditions, could hardly be considered sufficient to bar the plaintiff's right of reformation, even were there no explanation of the delay. But the bill alleges that the mistake was not discovered by plaintiff until after the bringing of its suit at law, on June 24, 1894; that no claim was made by defendant for any breach of warranty involving the matter in question until after the bringing of that suit; that on August 12, 1895, the discovery of the error was communicated to the defendant, with a request to rectify it; and that on November 14, 1895, plaintiff brought in a state court of Massachusetts a bill in equity for reformation, which, on July 30, 1896, was dismissed upon demurrer for want of jurisdiction. These allegations show a reasonable degree of diligence upon the part of the plaintiff, especially in view of the fact it does not seek to enlarge its right by the reformation, but merely to defend against a counterclaim first asserted by defendant but little more than two years before the filing of this bill. As, upon the case stated, the pendency of the suit at law tends in no wise to the prejudice of the defendant, and the defendant has suffered no substantial detriment from plaintiff's delay in seeking reformation, the demurrer is overruled.