# CHARLESTON

TAYLOR *v.* GODFREY *et al.*

Submitted September 11, 1907.    Decided November 19, 1907.

1. MORTGAGES—*Release.*

Whether a particular transaction amounts to a release of a lien is a question of intention on the part of the releasor. (p. 683.)

2. SAME—*Cancellation.*

The cancellation of a mortgage on the record is only *prima facie* evidence of its discharge; the owner may prove that the cancellation was done by fraud, accident or mistake, and, if he does so, his rights under the mortgage will not be affected by such cancellation. (p. 683.)

3. CANCELLATION OF INSTRUMENTS—*Mistake.*

Where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the draftsman either as to fact or to law does not accomplish the purpose intended or violates it, equity will relieve from such mistake. (p. 683.)

4. SAME—*Negligence.*

Negligence may not of itself be sufficient to bar relief in equity on the ground of mistake, if the other party has not been prejudiced thereby. (p. 684.)

5. SAME—*Evidence.*

Mere neglect or omission to read or know the contents of a written instrument before execution is not necessarily a bar to cancellation thereof; relief in such case is proper if the instrument, through mistake, fails to accomplish the purpose intended. (p. 684.)

6. SAME.

Equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction. (p. 685.)

Appeal from Circuit Court, Mingo County.

Bill by R. N. Taylor against A. I. Godfrey and others. Decree for plaintiff. Defendants appeal.

*Reversed.    Remanded.*

STOKES & BRONSON, for appellants.

DOUGLAS W. BROWN, for appellee.

MILLER, PRESIDENT:

The material facts are few and not controverted. September 21, 1904, R. N. Taylor borrowed from H. M. Meyers $3,000, executing his twelve-month note therefor. At the same time, as security, he executed to Meyers a paper entitled a "deed of conditional assignment" of certain royalty interests reserved in coal leases then being operated by the Chattaroy Colliery Company. Although a copy thereof

was delivered to Meyers, and also to said colliery company for its information in paying to Meyers the royalties accruing to Taylor under said leases, Meyers, on account of its character, became dissatisfied with the assignment; and at his request Taylor on January 27, 1905, executed to A. I. Godfrey, trustee, a formal deed of trust, describing said note and reciting his desire to "more effectually secure the same," binding himself to pay it when due, and conveying to said trustee the said royalty interests (being one cent on each ton of coal mined and shipped by virtue of the above leases,) in trust to receive and apply to the note said royalties as they accrued; providing that, in default of payment of sufficient royalties to pay said note at maturity, and the further default of said Taylor to pay the same at maturity, the trustee should, on request of the *cestui que trust*, proceed to sell said royalty interests and from the proceeds discharge said note. This deed of trust was recorded January 28, 1905; and, on receiving it, Meyers surrendered to Taylor the "deed of conditional assignment." The money so loaned to Taylor had been borrowed by Meyers from a bank, on his note endorsed by his father, Israel Meyers, he pledging to his father as security for such endorsement certain stocks; and, his father afterwards demanding additional security, he assigned the deed of trust and note also to him February 3, 1905, reciting his desire to more effectually secure him in said endorsement, which assignment was recorded four days later. November 28, 1905, the following release, acknowledged November 25th, was admitted to record in Mingo county:

"I, I. Meyers, hereby release a certain deed of trust made by R. N. Taylor and A. I. Godfrey, my trustee, and therein called an indenture, dated the 1st day of January in the year 1905, 'and of record in the clerk's office of the county court in Mingo County, West Virginia, in book of bonds, contracts and leases No. 6. at page 224.

ISRAEL MYERS."

This paper is the only subject of controversy in this suit. Taylor was no party to it, and knew nothing about it until his attention was afterwards called to it by H. M. Meyers and the mistake in its execution and recordation explained to him; and, as he admits, he then agreed to join in a

paper to be recorded which would show the mistake, or to execute another deed of trust, but which promise he afterwards refused to make good—excusing himself by saying his promise was made on the spur of the moment, without proper consideration of the satisfaction by Meyers of his liabilities to other creditors, to secure preference of his father over whom Taylor claims was the purpose in substituting the deed of trust for the conditional assignment, and not, as Meyers claims and the deed of trust itself recites, "to more effectually secure" the note of Taylor. November 29, 1905, Taylor having declined to fulfill his promise, Israel Myers executed and placed on record a release to H. M. Meyers of the assignment of the deed of trust and note of February 3, 1905; in which release he also declared his mistake in executing the above release of November 25th, that Taylor had not satisfied the trust, and that he thereby nullified said release as having been executed through mistake and without consideration. It will be noticed that the release describes the trust as dated "the 1st day of January in the year 1905," while it appears to be dated January 27th. As no question is raised as to this, we assume the discrepancy is a clerical error in the transcript of the record. Default being made in payment of sufficient royalties, and by Taylor, to discharge the note, Godfrey, trustee, pursuant to the trust, on October 18, 1906, gave notice of sale of the property on November 24, 1906, to restrain which the present suit was brought. The bill was filed November 14, 1906; and the temporary injunction awarded was, upon final hearing January 15, 1907, on bill, cross-answers and proofs filed, by final decree made perpetual.

The relief sought is based mainly on the claim that Israel Meyers was absolute owner of the deed of trust and note by assignment, with full power to release the lien; that his release thereof so made and recorded constituted a complete discharge, and a reinvestment of the title to the property in the plaintiff; and that, though executed in mistake and without consideration, yet, because of gross negligence of Israel Meyers and his son in the execution thereof, equity will afford them no relief. Some reliance is also placed on the charge of the bill, flatly denied in the answers, that the

real purpose of the deed of trust, contrary to its recitals and terms, was to enable H. M. Meyers to secure his father in preference to other creditors, and that, as these creditors had been paid, no legal or moral obligation rested on Taylor to restore the effect of the released security. In our opinion, however, the facts and circumstances shown do not support this charge. The conditional assignment was not such a paper as a good business man would accept as security for such a loan; it provided no time when, in default of royalty payments or default in payment of the note at maturity, the property assigned might be sold to pay the note; it limited the benefits thereof solely to the rather uncertain and indefinite amount of royalties to accrue, and lengthened out the time of possible payment far beyond the date of maturity of the note, the royalties collected little more than keeping pace with the interest; and it is most natural that Meyers should have wanted these deficiencies cured, as they were, by deed of trust. The facts on which Taylor founded his excuse for non-fulfillment of his promise to correct the mistake were as well known to him at the time as afterwards. Then the excuse did not occur to him. The trust was made primarily to secure H. M. Meyers, not his father; and, as between Taylor and Israel Meyers, the latter could not have released the deed of trust, without his consent, so as to defeat his rights thereunder.

Another ground of relief alleged, but apparently not relied on in proof or argument here, is that the defendants are concluded by the final decree in a suit brought by Godfrey, trustee, in February, 1906, against Taylor and others to enforce the lien of said deed of trust, in which it is alleged the defendants' answer pleaded said release in defense and the final decree adjudicated its validity. The answer here of H. M. Meyers denies this averment, alleging that the bill in that suit was dismissed not on the merits, but on demurrer, with saving of rights to the parties. As this cause was not heard upon the decree in that suit, we will treat the point as waived.

The answer of H. M. Meyers, defensive and praying for the affirmative relief of a sale of the property to satisfy the lien of said deed of trust, relates to the circumstances attending the making and recordation of said re-

lease. The facts alleged and proven are that, about the time of the release, H. M. Meyers was negotiating with Taylor for the purchase of the interest in the property covered by the trust; that Taylor, professing now to have understood said negotiations were on behalf of Israel Meyers, had procured a deed to be drawn to the latter, as well as a form of release from Israel Meyers to him of the deed of trust; that this form of release in some way came into the hands of H. M. Meyers, who, assuming it was such a release of the assignment of the trust he had made to his father as he had told Taylor he would procure, had his father sign and acknowledge the paper and placed it on record, his father not reading the release, and neither discovering the mistake until some days afterward. The negotiations for the purchase of the property came to naught; and the question now is, shall the plaintiff be allowed to avail himself of the mistake in order to defeat enforcement of the trust?

Elaborate briefs were presented on both sides. While as a general rule many, if not all, of the propositions contended for by plaintiff's counsel are correct, and supported some of them by our own cases, yet, as we view the authorities cited, they are for the most part inapplicable to the facts here. They all relate to instances where releases have been upon consideration, or the rights of third persons have intervened, or the conditions or positions of the parties would be injuriously affected by relieving the party from his mistake or negligent act, and to transactions between the party claiming the benefit of the paper involved and the one asking relief therefrom. Under all such circumstances, a party will not be relieved of his negligent act in failing to read the paper, or to inform himself of a fact within his reach necessary to a proper understanding of the contract. We need not refer to the numerous decisions of this Court on the subject cited by counsel; for they do not cover this case.

Taylor was no party to the transaction between H. M. Meyers and his father relating to the release involved here, knew nothing about it, recognized the mistake afterwards, and promised to join in correcting it; both parties agree that the paper signed did not express their agreement, but

deprived them of rights they intended to preserve; and can we say equity opens not its doors to afford relief? We do not so understand the law. Generally speaking, whether a particular transaction amounts to a release of a lien is a question of intention on the part of the releasor. *Stribling* v. *Coal Co.*, 31 W. Va. 82; *Fidelity Co.* v. *Railroad Co.*, 32 W. Va. 266. The latter case holds that "cancellation of a mortgage on the record is only *prima facie* evidence of its discharge, and that the owner may prove that the cancellation was done by fraud, accident or mistake, and, if he does this, his rights under the mortgage will not be affected by the improper cancellation of it."

Mistake against which equity will give relief has been defined as "some unintentional act, omission or error arising from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence." Kerr, Fraud and Mistake 396; Story Eq. 108; *Ferrell* v. *Ferrell*, 53 W. Va. 519. The mistake in this case may be likened to that of a scrivener in drafting an instrument that does not express the agreement of the parties, which a court of equity will always correct. *Troll* v. *Carter*, 15 W. Va. 567; *Pennybacker* v. *Laidley*, 33 W. Va. 624; *Lough* v. *Michael*, 37 W. Va. 679; but not, says the latter case, to the prejudice of a lienor whose debt was contracted without notice thereof. In *Russell* v. *Mixer*, 42 Cal. 475, the mistake was very much like the one here—a *release* of a mortgage was made, by an agreement to which the mortgagors were not parties and of which they had no knowledge, when the understanding between the parties affected was for an *assignment* of the mortgage and the note secured. The court says: "There is no appreciable distinction between this case and that where a scrivener, through ignorance or inattention, fails to select or prepare such an instrument as effectuates the previous agreement of parties, and relief is always decreed in that case;" citing 1 Story Eq. section 115. In the section of Story referred to the author says: "If there had been any mistake in the instrument itself, so that it did not contain what the parties had agreed on, that would have formed a very different case; for where an instrument is drawn and executed which professes or is intended to carry into execution an agreement previously entered into, but which by mistake of the drafts

man either as to fact or to law does not fulfill that intention, or violates it, equity will correct the mistake so as to produce a conformity to the instrument." In *Heyder* v. *Association*, 42 N. J. Eq. 403, it is held: "The lien of a mortgage duly registered will not be lost by a cancellation of record effected through accident, or the mistake or fraud of third persons." To the same effect are *Dudley* v. *Bergen*, 23 N. J. Eq. 397, and *Dubois* v. *Schaffer*, *Id.* 401. In *Skillman* v. *Teeple*, 1 N. J. L. 232, an agreement and release made without consideration, the only ostensible one being that the releasor should have a lien on the mortgaged premises after a third mortgage (she being entitled to priority and being induced to give up to personal security on notes and take a place in a list of encumbrances on the mortgaged premises posterior to that to which she was entitled,) the court held evinced such ignorance, mistake and misapprehension of her rights that the agreement should be set aside and held void, and that a court of equity should find no impediment in correcting it. It is there said: "Equity, in rescinding contracts, does not confine itself to cases of fraud; cases of plain mistake or missapprehension of right, though not the effect of fraud or contrivance, are likewise entitled to the interposition of the court."

Failure to read an instrument before executing it is not always such negligence as will bar relief, even where the transaction is between the parties directly affected by it. *Albany Savings Institution* v. *Burdick*, 87 N. Y. 40; *Andrews* v. *Gillespie*, 47 N. Y. 487. And Pomeroy, 2 Pom. Eq. section 856, says: "Even a clearly established negligence may not of itself be sufficient ground for refusing relief if it appears that the other party has not been prejudiced thereby;" and, referring to the general rule that equity will never give relief from mistake if the other party could by reasonable diligence have ascertained the real facts, or where the means of information are open to both parties and no confidence is reposed, he continues: "A moment's reflection will clearly show that these rules can not possibly apply to all instances of mistake, and furnish the prerequisite for all species of relief. Their operation is, indeed, quite narrow; it is confined to the single relief of cancellation, and even then it is restricted to certain special kinds of

agreements." "The mere neglect or omission to read or know the contents of a written instrument is not necessarily a bar to reformation. The relief is proper when the instrument fails to conform to the agreement between the parties, through mutual mistake or mistake coupled with fraud, however the mistake may have been induced." 6 Pom. Eq., section 680. "A court of equity will grant relief on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction." 1 Jones on Mortg., section 971 and note.

In our opinion, the defendant H. M. Meyers has brought himself within the principles of these authorities; and there should have been a decree in the circuit court, upon his cross-answer praying for affirmative relief, cancelling the release of the deed of trust so executed by his father, and decreeing a sale of the property covered thereby to satisfy the mortgage debt, when ascertained by reference to a commissioner or otherwise. The final decree of the circuit court is therefore reversed and annulled and the cause remanded, to be further proceeded with according to the principles herein enunciated and the rules governing courts of equity.

<div align="right">

*Reversed.    Remanded.*