FREDERICK E. PERKINS *et al.*, *vs.* HENRY A. KIRBY.

JUNE 22, 1916.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

(1) *Equity. Mutual Mistake. Leases. Reformation.*

Upon the issue as to whether lessor under two written leases was entitled to have the leases reformed so as to require the lessee to pay the taxes assessed upon the leased estate in addition to the amount of rental fixed in the lease, lessor claiming that such a covenant was omitted by mutual mistake, evidence considered and relief granted.

(2) *Equity. Mutual Mistake. Reformation of Lease.*

While equity can only afford relief in cases of mutual mistake, yet where both parties to a lease have apparently assumed and acted upon the assumption for a period of ten years that it provided for the payment of taxes on the part of lessee, it cannot be said that the mistake is other than mutual.

*(3) Leases. Net Rental.*

The term "net rental" as used in respect to real estate means a sum over and above all expenses.

*(4) Leases. Reformation. Mistake.*

Mere neglect or omission to know the contents of a prior written lease of property for a period of ten years before execution of a new lease for a second term following the form of the prior lease, is not necessarily a bar to relief if the instruments through mistake fail to accomplish the purpose intended.

*(5) Leases. Reformation. Mistake.*

Where both parties to a lease evidently assumed that they were acting in accordance with the lease in the payment and receipt of taxes and for nearly ten years nothing arose to suggest to lessor an examination of the lease, the fact that lessor directed the preparation of a new lease in the same form as the previous lease, the latter having apparently effected the payment of taxes by the lessee, does not amount to such negligence as to debar lessor from the reformation of the lease to provide for the payment of taxes by lessee, where it does not appear that it would work any prejudice to lessee.

*(6) Leases. Reformation. Mistake.*

Where lessee brought suit against lessor to recover the amount of taxes claimed to have been paid under mistake, lessor is entitled upon presentation of facts warranting such action, to a reformation of the lease, as a necessary defence to the action, although the term of the lease has expired.

*(7) Equity. Reformation. Mutual Mistake.*

Relief in equity may be granted on the ground of mistake not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction.

*(8) Equity Pleading. Information and Belief.*

Where positive averments were made upon information and belief, allegations in a bill setting out the transaction between the parties, their respective relations with each other, and the common attitude which both maintained for ten years toward the matter; the amount of rent suggestive of a percentage upon some valuation of the property; the payment of the taxes by lessee and demand for same by lessor, clearly indicating an original agreement to the effect that taxes were to be paid by lessee and that both parties must have assumed that such agreement was embodied in the lease, furnish sufficient facts to constitute the basis of the information.

*(9) Equity. Alternative Relief. Multifariousness.*

Where two leases related to the same premises and the same questions were raised in respect to each, the second being practically a continuation of the first, the first having expired, while lessor could not ask for its cancellation he could seek its reformation to make it a defence to an action by lessee, but the second lease being in force, lessor could ask for relief in the alter-

native, either that it be reformed or cancelled, and the objection of multi-
fariousness does not apply where the causes of action arise out of the same
transaction or series of transactions forming one course of dealing and tending
to one end.

*(10)   Estoppel.*

A verdict and judgment are conclusive by way of estoppel only as to those facts
which were necessarily involved in them, without the existence and proof of
which such verdict and judgment could not have been rendered, and the
court must ascertain when a judgment in a former action is pleaded in bar,
precisely what was judicially settled in the former action and what was the
cause of that action and the cause of the action to be tried.

BILL IN EQUITY.   Heard on appeal of respondent and
dismissed.

VINCENT, J.   This is a bill in equity brought by the com-
plainants, Frederick E. Perkins, Charles Henry Perkins, Jr.,
Willard C. Perkins and Charles R. Stark, as trustees under
the will of Charles H. Perkins, against the respondent,
Henry A. Kirby, for the reformation of two certain leases.
Each of these leases covers the same two tracts of land with
the buildings and improvements thereon situated respectively
on the corner of Sprague and Harrison streets and the corner
of Harrison and Westfield streets, in the city of Providence.
The first of these leases from Charles H. Perkins to the
respondent, Henry A. Kirby, bears date August 28, 1901,
and covers a period of ten years from October 1, 1901.
The second lease, from Frederick E. Perkins and others,
trustees under the will of Charles H. Perkins, bears date
June, 1911, and covers a period of two years from October 1,
1911, with the privilege of renewal for a further period of
three years.   The provisions of these leases, with which we
are concerned in the consideration of the questions before
us, are practically identical.   It is claimed by the com-
plainants that under the first lease the annual rental of said
premises during the period of ten years therein provided
for was designed to be four per cent. upon $94,631.24, which
was the valuation of the property as the same appeared on
the books of Mr. Perkins, and that under the second lease the
rental was advanced to six per cent. upon the same valuation.

There is some testimony that the amount of rental was arrived at in that way and such testimony is corroborated by the figures given, the rental under the first lease being $3,785.00 per year, and under the second lease, $5,678.00 per year.

In and by the terms of these leases the lessee was obligated to keep the premises in good repair, to pay for all the water used thereon and to keep the buildings, boilers and elevator insured. The leases, however, contained no provision as to the payment of the taxes upon the property by the lessee, and taken in the form as drafted and executed they could not be said to furnish any support for such a claim.

The complainants contend however that there was an agreement between the parties that the lessee was to pay all taxes, rates and assessments; that it was fully understood and agreed that the rental named was to net the lessor, in one case, four per cent. and the lessors in the other case six per cent. upon the before mentioned valuation; and that all repairs, water rates, insurance premiums, taxes, rates and assessments were to be paid by the lessee in addition to the stipulated rent, but that through a mutual mistake no provision was inserted in the leases obligating the lessee to pay taxes and therefore the leases should be reformed by the addition of apt words to that effect.

The respondent denies that there was ever any agreement, on his part, to pay taxes and contends that the complainants are not entitled to have the leases reformed as prayed for in their bill.

The case was heard in the Superior Court on oral testimony, upon issues framed, and a decision was rendered in favor of the complainants, the court finding;

"FIRST: That there was an agreement between Charles H. Perkins and Henry A. Kirby, at the time of the execution of the lease, dated September 30th, 1901, that the amount provided for in said lease as rental should be a net rental, and that the lessee, in addition to paying said rental, should pay all taxes, rates, and assessments upon said premises,

and that it was intended that there should be apt words and provisions in said lease to carry out the said agreement.

"SECOND: That apt words and provisions requiring said lessee to pay all taxes, rates, and assessments upon said leased premises were left out of said lease of September 30th, 1901, by mutual mistake of the parties.

"THIRD: That it was the agreement of the complainants, as trustees under the will of Charles H. Perkins, and Henry A. Kirby, that in the lease of June, 1911, the rental provided should be a net rental, and that the respondent, in addition to paying the rental sum therein provided, should pay all taxes, rates, and other assessments upon the premises described in said lease, and that the said lease of June, 1911, should contain apt words and provisions to that effect.

"FOURTH: That apt words and provisions to the effect that the respondent should pay all taxes, rates, and other assessments upon the premises were left out of the lease of June, 1911, by mutual mistake of the parties.

"FIFTH: That the taxes paid by the respondent during the time the lease of 1901 was in effect were not paid by him through a mistake on the part of his bookkeeper, but were paid by him knowingly.

"SIXTH: That the amount which the complainants have been obliged to pay for taxes, rates, and assessments on the leasehold premises, since the respondent refused further to pay the taxes, amounts to $4,907.76, which, with interest of $717.80, amounts to $5,625.56."

Upon these findings, and in accordance therewith, the following decree was entered.

"FIRST: That the lease executed by Charles H. Perkins and Henry A. Kirby, dated September 30th, 1901, be and the same hereby is reformed and reframed by inserting after the words in said lease: 'And the said lessee doth further agree to keep the premises in good repair,' the words 'and to pay all taxes, rates and assessments whatsoever upon said premises.'

"SECOND: That the lease entered into by the complainants hereto, as trustees under the will of Charles H. Perkins,. and the respondent herein, under date of June, 1911, be and the same hereby is reformed and reframed by inserting after the words, 'And the said lessee, for himself and for his executors, administrators and assigns, doth further agree to keep the premises in good repair,' the words 'and to pay all taxes, rates and assessments whatsoever upon the said premises.'

"THIRD: That Henry A. Kirby, the respondent herein, be and he hereby is perpetually enjoined from further prosecution of the suit at law, entitled 'Henry A. Kirby *vs.* Frederick E. Perkins *et al.*,' No. 29833, and now pending in the Superior Court, Providence County, State of Rhode Island.

"FOURTH: That the said respondent, Henry A. Kirby, be and he hereby is ordered to pay to the complainants herein or their solicitors of record, on or before the 4th day of November, A. D. 1915, the sum of $5,625.56, together with the costs of this suit to be taxed by the clerk of this court."

From this decree the respondent has taken an appeal to this court and in his reasons of appeal he sets forth three certain alleged errors of the Superior Court: (1) That said decree is against the law; (2) That said decree is against the evidence and the weight thereof, and (3) That said decree (as a whole) is erroneous.

The first lease bears date August 28, 1901, and it is to that lease which the trial court undoubtedly refers in its first and second findings and in the first paragraph of the decree, although the date is stated as September 30, 1901.

The principal question which is presented for our consideration is whether or not the complainants are entitled to have the leases so reformed in respect to the covenants therein to pay rent as to require the respondent lessee to pay the taxes assessed upon the leased property in addition to the amount of rental fixed in the leases.

The complainants claim that in accordance with the agreement between the parties the respondent was to pay the taxes and that that portion of the agreement was omitted from the written leases by mutual mistake and that they are therefore entitled to have them reformed in that particular.

On the other hand the respondent contends that he always knew there was no obligation on his part to pay the taxes; that he never agreed to pay them; and that the leases fully express the entire agreement made by him with Charles H. Perkins, the original lessor, and his successors in title, the present complainants, and therefore no mistake exists which can be corrected by way of reformation. In determining whether by the original agreement of the parties it was contemplated that the respondent lessee was to pay the taxes, it seems to us that a brief reference to some of the facts brought out at the hearing will suffice. There is some testimony on the part of Frederick E. Perkins, one of the complainants, who was present during a conversation between his father, Charles H. Perkins, and the respondent, which took place in the fall of 1901 after the execution of the first lease, that it was stated during such conversation by Mr. Charles H. Perkins that he had nothing to do with the property in question; that he had leased it to the respondent who was to pay all charges at a rental of four per cent. net; and that all of these statements were assented to by the respondent. This conversation the respondent denies.

Taking into consideration the valuation of the property as carried upon the books of Charles H. Perkins, and his successors the present complainant trustees, and the amount of rental fixed in the leases, it is apparent that the lessors had in mind the receipt of an income of four per cent. under the first lease and six per cent. under the second lease. Besides, these leases provide in terms for the payment, on the part of the lessee, of all other charges, except taxes, including water rates and insurance upon buildings, boilers, and elevators which would tend to some extent to show that

a net rental of four per cent. in the one case and six per cent. in the other was in the minds of the parties.

The first lease was executed August 28, 1901, and provided for a term of ten years from October 1, 1901.

During practically the whole of this period of ten years the taxes upon this property were paid annually in the first instance by Charles H. Perkins, or by the complainant trustees as his successors, who annually sent a bill for the same to the respondent and received his check in settlement thereof. These bills were itemized. Sometimes they contained two separate items, one for rent and the other for taxes, the item for taxes showing the amount assessed upon each of the two lots and buildings comprising the leased estate. Upon several occasions the bill for taxes was rendered separately and paid by check in which no amount of rent was included. All of these checks were signed by the respondent.

On September 21, 1911, nine days before the expiration of the ten-year lease, the respondent addressed a letter to the complainants to the effect that his attention had just been called to the fact that bills for taxes had been sent to him and enquiring by what authority the same had been done. The respondent claims that he signed these checks for taxes without taking any particular notice of the amount or the name of the payee, although he may have in some instances observed the name of the payee and supposed that the check was in payment of rent. In this connection it may be observed that the quarterly rent was $946.25, while the October checks signed by the respondent were $2,173.19, or $1,226.94, the difference in amount depending upon whether the quarter's rent and the annual taxes were included in one check or whether the taxes were paid by separate check as they were in several instances. The respondent admits that he sometimes signed two checks in the month of October, within a few days of each other, the one being for rent and the other for taxes, the latter being several hundred dollars larger in amount than the former.

It seems incredible that under such conditions a shrewd business man, competent to successfully carry on, and manage the affairs of a large establishment engaged in the manufacture of jewelry, should go on for a period of approximately ten years paying taxes to the amount of thousands of dollars, and yet have no knowledge as to the purpose for which such an amount of money was being expended.

We do not think that in view of all these facts the Superior Court was in error in discrediting the testimony of the respondent and in finding that he knew that he was paying the taxes upon the leased property and further that there was between the respondent and Charles H. Perkins an agreement that all expenses in the care and management of the property, including taxes should be borne by the former. If the respondent knew he was paying taxes it must be inferred that he was doing so under some agreement with his lessor. To be sure the respondent pretends that he awakened to the fact that he had been paying taxes about the time of his letter of September 21, 1911, but we think it is a fair and reasonable conclusion that the discovery, which he then made, was that the lease contained no specific provision relating to taxes and that he might possibly recover from the complainants the amount which he had paid on account thereof.

The respondent contends that the alleged mistake was not mutual, but was one for which Charles H. Perkins and the (2) complainants, as lessors, were wholly responsible; that the leases as drawn fully expressed the agreement between the parties as he understood it; that upon such a state of facts the complainants are not entitled to equitable relief and he cites some authorities in support of the general proposition that equity can only afford relief in cases of mutual mistake. With these authorities we have no controversy, but in our view of the case it is unnecessary to discuss them. Where both parties to a lease have apparently assumed and acted upon the assumption for a period of ten years that it provided for the payment of taxes on the part of the lessee it cannot be said that the mistake is other than mutual.

The respondent further claims that the interpretation of the lease must be against the lessor. A discussion of that point does not seem to be pertinent for the reason that the question before us is not one of interpretation, but whether or not there was an agreement between the parties regarding the payment of taxes, which, through a mutual mistake was not incorporated in the written lease.

The second lease, being the lease of June, 1911, was copied from the earlier lease, some provisions regulating the custody of the insurance policies being added thereto which additions are not important to the consideration of the questions before us. It is evident that both parties understood that the occupation of the premises under this lease was to be upon the same terms and conditions as the occupancy under the former lease with the exception that there was to be an increase of rent and the insurance policies were to be placed in the custody of the lessors. This second lease was executed by the complainants on the 29th of June, and by the respondent on the 1st of July, 1911, almost three months prior to the alleged discovery of the respondent that he had unwittingly during a period of ten years paid out some $10,000.00 in taxes, for the payment of which he was not obligated. At the time of the execution of this second lease the attitude of both parties respecting this estate and their rights under the leases in question remained unchanged and therefore the execution of the second lease must have been effected under the same conditions which had prevailed during the time the first lease was in force down to the date of the respondent's discovery which was first brought to the attention of the complainants by the respondent's letter of September 21, 1911.

The negotiations regarding this second lease were carried on by correspondence which contains several references to a net rental and a net rental appears to have been finally agreed upon. The term "net rental" is generally understood to mean a sum over and above all expenses and that is the meaning which according to the testimony of experts, is

attached to it when used in connection with matters pertaining to real estate. Under all the circumstances, as well as the testimony bearing upon the matter of the second lease, it seems to us that the same reasons exist for its (3) reformation which we have found to be sufficient to reform the first lease.

Another contention of the respondent is that the complainants have been guilty of negligence in failing for a long period to discover the omission in the lease and also in ordering the preparation of a new lease in 1911, following the form of prior lease with only a change in the amount of rent and the addition of a provision regarding the custody of the insurance policies, which negligence on the part of the complainants should bar them from the relief which they seek. Mere (4) neglect or omission to read or know the contents of a written instrument before execution is not necessarily a bar to the cancellation thereof. Relief in such a case is proper if the instrument, through mistake, fails to accomplish the purpose intended. *Taylor* v. *Godfrey*, 59 S. E. 631 (W. Va.).

The conclusion to be drawn from the authorities on this point seems to be satisfactorily stated in 2 Pom. Eq. Juris., § 856, as follows: "It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself and concealed them. A moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake and furnish

the prerequisites for all species of relief. Their operation is indeed quite narrow; it is confined to the single relief of cancellation, and even then it is restricted to certain special kinds of agreements." See also, *Eberle* v. *Heaton,* 124 Mich. 205; *Kelley* v. *Ward,* 94, Texas, 289; *Danielson* v. *Neal,* 130 Pac. 716; *Story* v. *Gammell,* 68 Neb. 709; *Boulden* v. *Wood,* 96 Md. 332; *Taylor* v. *Godfrey,* 59 S. E. 631.

(5) In the case at bar both parties evidently assumed that they were acting in accordance with the lease, in the payment and receipt of taxes, and for nearly ten years nothing arose to suggest to the complainants an examination of the lease. The fact that the complainants directed the preparation of a new lease in the same form as the previous lease, the latter having apparently effected the payment of taxes by the lessee, does not seem to us to amount to such negligence as should, either in reason or upon authority, debar the complainants from relief. Besides it cannot be said that the reformation of the leases at the present time can work any prejudice to the respondent. The result to the respondent would have been the same had the leases been reformed at some time closely following their execution.

(6) The claim of the respondent that the first lease of 1901 having expired cannot now be reformed seems to us to be without merit. It appears that the respondent has brought a suit at law against the complainants to recover the amount of the taxes which he alleges were paid by mistake. The prosecution of that suit has been temporarily enjoined until the termination of the present proceeding and until the further order of the court decreeing such injunction. The lease unless reformed would furnish no defence to that suit and would give the respondent the opportunity to recover from the complainants a large sum of money to which, in our opinion, he is not entitled.

The reasons of appeal are somewhat voluminous and it will be convenient to take the questions raised thereby substantially as they are summarized by the respondent in his brief.

The questions of law are (1) Does the complainants' second amended bill of complaint sufficiently and legally state a good cause of action against the respondent ? (2) Did the Superior Court err by the entry of its decree on January 15, 1914, declaring the respondent's plea in bar to be insufficient ? (3) Were the exceptions of the complainants to the answer of the respondent properly sustained by the Superior Court and (4) Do the facts as found by the Superior Court warrant such reforming of the leases in question as would compel the respondent to pay money which the written agreement does not require ?

The questions of fact are, does the evidence sustain the finding of the trial court (1) That there was an agreement between Charles H. Perkins and Henry A. Kirby at the time of the execution of the lease of August 28, 1901, that the rental mentioned therein should be a net rental, the lessee to pay all taxes, rates and assessments and that it was intended that said lease should include apt words to that effect ? (2) That apt words requiring the lessee to pay all taxes, rates and assessments upon the leased premises were omitted from said lease by mutual mistake of the parties ? (3) That it was the agreement of the complainants and respondent that in the lease of June, 1911, the rental provided for should be a net rental and that the respondent in addition to paying the rental sum therein named should pay all taxes, rates and other assessments and that such lease should contain apt words to that effect ? (4). That such apt words were omitted by mutual mistake and (5) That the taxes paid by respondent were not paid by him through a mistake on the part of his bookkeeper ?

In elaborating these several points raised by his appeal, the respondent argues that the second amended bill is bad in form because it lacks certain necessary allegations, and he goes on to say that there is no allegation of mutual mistake and cites authorities to the effect that the want of such an allegation renders the bill bad on demurrer. There is no question as to the law upon this point, but we think, from an

examination of the bill, that a mutual mistake is sufficiently set forth. It is distinctly stated in the fourth paragraph of the bill that it was intended and agreed between the parties to the original lease that the lessee should pay all taxes, rates and assessments and that apt words to that effect were (7) omitted from the written instrument through a mutual mistake. The trial court found the mistake to have been mutual and such finding was in our opinion justified by the evidence. Relief in equity may be granted on the ground of mistake, not only when the mistake is expressly proved, but also when it is implied from the nature of the transaction. *Taylor* v. *Godfrey*, 59 S. E. 631. We see no occasion therefore for any discussion of the cases holding that the omission of an allegation of mutual mistake is an error fatal to the bill, the bill not being defective in that particular.

The respondent further argues that there is no allegation in the bill as to what mistake was made, who made it, or as to how it was made. The bill alleges that there was an agreement between the parties that the rental fixed in the lease was to be a net rental, that such an agreement was recognized and acted upon by both parties for a period of some ten years, each party apparently fully understanding that the original lease obligated the lessee to pay taxes and that the renewal lease was of the same tenor in that regard. It seems to us that the bill sets forth all of these matters with as much particularity as the circumstances of the case would permit and that the allegations thereof are sufficient to show that the omission of a provision from the leases relating to taxes was due to the inadvertence and mistake of both parties.

Again the respondent asserts that positive averments are made upon information and belief without alleging facts which constitute the basis of such information, at the same time admitting that the allegations relative to the first lease (8) must of necessity be made upon information, but he claims that the basis of the information of the complainants and their belief in the same should be, but is not, stated.

The information upon which the averment is made is to be found in the allegations of the bill which sets forth the transactions between the parties, their respective relations with each other, and the common attitude which both maintained, for some ten years, toward the whole subject-matter. The amount of the rent fixed at an odd and somewhat unusual sum, suggestive of a percentage upon some valuation of the property, the payment of the taxes by the lessee and the demand for and the receipt of the same by the lessors clearly indicates that there must have been an original agreement to the effect that the taxes were to be paid by the lessee and that both must have assumed that such agreement was embodied in the leases. Upon the information which these facts and circumstances furnish, the complainants might well aver the existence of such an agreement.

The complainants in their bill referring to the renewal of the lease of 1901 set forth the following facts and averments.

"FIFTH: And the complainants further say that on, to wit, the first day of May, 1911, the said respondent sent a letter to them, as executors of the estate of Charles H. Perkins, wherein be broached the question of extending said lease 'under the same terms and conditions, for a period of five years.'

"SIXTH: That, after some correspondence and negotiations with reference to the same, the said complainants wrote the said respondent that they had given careful consideration to the question of renewal of the lease and thought that the present amount of rental was too small a return on real estate and stated, in said letter, that they would renew the lease for five (5) years from the 1st day of October, 1911, for a net rental of Five Thousand Six Hundred Seventy-Eight Dollars ($5,678), payable quarterly as at present, but that in making the new lease, the clause relating to the insurance papers must be explicit, namely: that the lessors should be the custodian of the insurance papers; said letter was signed, Estate of Charles H. Perkins, by Charles R. Stark, Charles H. Perkins, Jr., W. C. Perkins.

"SEVENTH: And the complainants aver that thereafterwards the said respondent agreed to said terms, except as to the time that said lease should run, and as to the time the said lease should run, it was agreed between the parties that it should run for the term of two years, and that the respondent should have the right of renewal of the same for the further term of three years, and the complainants undertook to have drawn an indenture of lease properly embodying said terms and said agreement between the parties. And the complainants aver that the former lease had been acted upon by the parties thereto for a long term of years and had received the contemporaneous construction and interpretation of the parties thereto and of the complainants as executors and trustees under the will of said Charles H. Perkins, and said respondent had prior to that time paid all taxes, rates and assessments whatsoever upon said premises for a long period of years, to wit, for the period of nine years; and there had always been an understanding and agreement, not only between the complainants and this respondent, but between the said Charles H. Perkins, deceased, and this respondent, that said rental for said premises should be a net rental and said respondent should pay all taxes, rates and assessments whatsoever, and the agreement between these complainants and this respondent for the renewal of said lease provided that said rental should be a net rental and that otherwise, except as to the provision relating to the insurance papers and as to the term that said lease was to run and the right of renewal thereof for a further term, said lease should be in the same terms as the said former lease, and for these reasons, they, said complainants, did not examine said former lease to see whether or not it contained apt words and provisions making said rental a net rental and requiring the respondent to pay all taxes, rates and other assessments whatsoever upon the said premises believing for the reasons aforesaid and because of the conduct of the said respondent as aforesaid, in paying the amount of said taxes, rates or other assessments as aforesaid,

that said lease did contain apt words and provisions to that
effect, but they gave directions to draw and had drawn a new
lease in exactly or substantially the same terms as those of
said former lease, except for said modifications; and they
aver that it was the intention and agreement of the parties to
said new lease that the said new lease should contain apt
words and provisions making said rental a net rental and
requiring the said respondent to pay all taxes, rates and other
assessments whatsoever, upon the said premises, but that
said apt words and provisions were by them left out of said
new lease inadvertently and by mistake and because they
believed and were induced to believe by the conduct of the
said respondent that they were in said former lease and
hence they believed and had reason to believe that, as said
new lease was to be in exactly the same terms as said former
lease in all other respects except in those particulars in
which it was agreed said new lease should be changed and
modified, there would be found in said new lease when drawn
as aforesaid apt words and provisions making said rental a
net rental and requiring the said lessee to pay all taxes,
rates and other assessments whatsoever, and they aver
that said new lease without apt words and provisions making
said rental a net rental and requiring said lessee to pay all
taxes, rates and assessments whatsoever upon said premises,
was executed by the said complainants by mistake in
believing that it did contain such apt words and provisions
and without knowledge that it did not contain such apt
words and provisions, and that it was executed by the
respondent either by mistake in believing that it did contain
such apt words and provisions and without knowledge on
his part that it did not contain such apt words and provisions,
or if he did know that it did not contain such apt words and
provisions and executed said lease intending thereafterwards
to attempt to compel the complainants to pay the taxes,
rates and other assessments upon said premises, then he was
guilty of inequitable conduct toward and was acting unfairly
toward the complainants and was wrongfully contriving and

intending to injure the complainants and deprive them of their rights in the premises. And the complainants aver that the respondent knew or had reasonable grounds for believing that the complainants supposed that said lease contained such apt words and provisions and would not have executed said lease had they not supposed said lease had such apt words and provisions."

The respondent claims that the complainants' case rests mainly on the above paragraph seven and that the allegations thereof do not state a cause of action with sufficient certainty to require him to answer the bill and he points out that the defect therein arises through the use of the disjunctive "or" where the complainants say the renewal lease "was executed by the respondent either by mistake in believing that it did contain such apt words and provisions and without knowledge on his part that it did not contain such apt words and provisions or if he did know that it did not contain such apt words and provisions and executed said lease intending thereafterwards to attempt to compel the complainants to pay the taxes, rates and other assessments upon said premises, then he was guilty of inequitable conduct toward and was acting unfairly toward the complainants and was wrongfully contriving and intending to injure the complainants and deprive them of their rights in the premises."

In support of this point the respondent cites some authorities which do not appear to sustain the position which he takes. A brief reference to one or two of them will suffice. The case of *Mengel* v. *Lehigh Coal, &c., Co., et al.,* 24 Pa. Co. Ct. 152, was one brought against several defendants charging that they "are discharging or have discharged coal dirt, refuse and polluted water" into a certain river or its tributaries. The defendants comprised two classes, those who had discharged coal dirt, refuse and polluted water into the river which had been carried by the stream and deposited on the land of the plaintiff and those who were still engaged in doing so. The same relief was asked against them all.

The court held that inasmuch as the same relief could not be granted against both classes of defendants a demurrer must be sustained. From the case of *Cella* v. *Brown*, 75 C. C. A. 608 at 620, the respondent quotes as follows: "While a party within the rule expressed in *Hardin* v. *Boyd*, 113 U. S. 756–763, where he is not certain as to what specific relief he is entitled, may so frame his bill as to entitle him to an alternative prayer for relief; yet the relief sought, whether the one or the other, must follow from the allegations of fact, which of themselves authorize and characterize the particular relief. · He may not on a bill disclosing that he recognizes and approbates a given transaction, praying for the enforcement of his asserted rights thereunder, in the same breath reprobate the transaction and ask that it ·be set aside for fraud, particularly without specifying any act or fraud vitiating it."

In *Hardin* v. *Boyd*, 113 U. S. 756 at 763, cited by the court in *Cella* v. *Brown, supra,* the court says: "It is a well settled rule that the complainant, if not certain as to the specific relief to which he is entitled, may frame his prayer in the alternative, so that if one kind of relief is denied another may be granted; the relief of each kind, being consistent with the case made by the bill. . . . Under the liberal rules of chancery practice which now obtain, there is no sound reason why the original bill in this case might not have been framed with a prayer for the cancellation of the contract upon the ground of fraud, and an accounting between the parties, and, in the alternative, for a decree which, (9) without disturbing the contract, would give a lien on the lands for unpaid purchase money. The matters in question arose out of one transaction, and were so directly connected with each other, that they could well have been incorporated in one suit involving the determination of the rights of the parties with respect to the lands."

We cannot see how these authorities aid the respondent in the position which he takes, that the complainants' bill does not state a cause of action with sufficient certainty to require

him to answer. Both of the leases relate to the same premises and under both of them the same questions are raised. The second lease is practically nothing more than a continuation of the first, both being simply different branches of the same transaction. The complainants could not ask for the cancellation of the first lease because the period which it covered had expired, but they might ask that it be reformed and thus be made available as a defence in the suit at law which the respondent has brought against them to recover back the amount of taxes which he has paid. The second lease being in force it would be competent for the complainants to ask for relief in the alternative, that is, that it be reformed or cancelled as the court might deem proper. The complainants allege in their bill that the omission of the provision to pay taxes arose out of a mistake which is shown by the circumstances of the case and the acts of the parties to have been mutual, but if not mutual as to the second lease, then the respondent must have known of such omission when he signed the second lease, concealing such information from the complainants with a view to taking advantage of the situation later and recovering from them the amount of the taxes which he had paid. We see nothing in this to disturb the finding of the trial court nor do we see any merit in the claim of the respondent that the complainants' bill is multifarious on the ground that the two leases must be considered as two separate and distinct transactions. The case of *Arnold* v. *Arnold*, 9 R. I. 397, cited by the respondent fails to support such a proposition. It was held in that case that if the causes of action arise out of the same transaction or series of transactions, forming one course of dealing and tending to one end, the objection of multifariousness does not apply.

The respondent sets up in his answer that on the 13th day of October, 1911, the complainants as trustees under the will of Charles H. Perkins brought a suit against him in trespass and ejectment to recover possession of the premises described in the second lease of June, 1911, alleging certain breaches of the covenants thereof, and he avers that in said

action the jury having rendered a verdict in his favor, which said verdict subsequently ripened into a judgment, the complainants must be held to have ratified said lease as written and are now estopped from denying that the same does not express the intention of the parties.

The case referred to is that of *Perkins* v. *Kirby*, 35 R. I. 84. From an examination of that case we find that the breach of the conditions of the lease was the alleged failure of Kirby, the defendant, to turn over to and place in the custody of the plaintiff trustees certain policies of insurance upon the buildings, the boilers and the elevator which formed a part of the leasehold estate:

The questions now before us were in no way included or considered in the ejectment suit referred to. The only question submitted to the court in that suit was whether or not the defendant had complied with the terms of the lease in properly insuring the property and turning over the policies of insurance to the plaintiffs as trustees. The action of trespass and ejectment was based entirely upon an alleged breach of a condition of the second lease. The condition as to the custody of the insurance policies was not included in the first or ten-year lease so that in no event could the respondent's plea of estoppel be of any avail in the matter of the reformation of the first lease.

(10)   In the case of *Sly* v. *Hunt*, 159 Mass. 151, the court speaking of estoppel said: "A verdict and judgment are conclusive by way of estoppel only as to those facts which were necessarily involved in them, without the existence and proof or admission of which such a verdict and judgment could not have been rendered," and in *Arnold* v. *Arnold*, 17 Pick. 4, it is stated that: "We must, therefore, ascertain, in every case, where a judgment in a former action is pleaded in bar, precisely what was judicially settled in the former action, and what was the cause of that action, and what is the cause of the action to be tried."

We think that these extracts from the above cited cases correctly state the principle of estoppel which if applied to the present case fully disposes of the respondent's plea.

See, also, *Providence Steam Engine Co.* v. *Hathaway M'f'g. Co.,* 79 Fed. 512; *Graham* v. *Guinn,* 43 S. W. 749; *Burkam* v. *Burk,* 96 Ind. 270; *Jones* v. *Sweet et al.,* 77 Ind. 187; Bigelow on Estoppel, 101.

The respondent has cited a number of cases in support of his contention upon the question of estoppel. We will not undertake to discuss them all, but a brief reference to one or two may be made. In *Sanger* v. *Wood,* 3 John. Ch. 416, the plaintiffs sued the defendant at law upon a contract and obtained a verdict and judgment for the amount claimed and later filed a bill to rescind the contract upon the ground of the defendant's fraud at the time the contract was made. In *Steinbach* v. *Relief Fire Ins. Co.,* 77 N. Y. 498, the plaintiff brought suit to recover the amount due on a policy of insurance and was defeated because he had violated the terms of the policy by keeping fireworks. The plaintiff then sought by a new action to reform the policy by inserting therein a permission to keep fireworks. A simple statement of these cases is sufficient to show that they in no way controvert the doctrine that the complainants can maintain their present suit unless the questions raised therein have been settled in the former action.

The respondent has devoted some space in his brief to the presentation of an argument that the exceptions of the complainants to the answer of the respondent were improperly and erroneously sustained by the trial court. We have read and considered the argument as briefed and we have examined the papers in the case relating to that phase of the matter without being able to find any error on the part of the trial court on any question sufficiently serious to demand particular discussion.

The respondent's appeal is dismissed, the decree of the Superior Court is affirmed and the case is remanded to said Superior Court for further proceedings.

*Waterman & Greenlaw,* for complainants.

*Edwin J. Tetlow,* of counsel.

*Bassett & Raymond,* for respondent.

*Russell W. Richmond,* of counsel.