STILLMAN LIVINGSTON v. MARTIN HAYES ET AL.

*Amendment of bill on final hearing.*

| 43 | 129 |
|----|-----|
| 93 | 271 |
| 43 | 129 |
| 124 | 209 |

Where the prayer of an auxiliary bill is inconsistent in some respect with a merely auxiliary proceeding, the limited jurisdiction is not enlarged in consequence.

A decree should follow the case pleaded and the allegations of the bill.

A prayer for foreclosure and sale as an independent remedy is inconsistent with a bill framed to aid proceedings in ejectment, and makes the bill multifarious and demurrable; and if it contains no other requisites of a foreclosure bill it will not support a foreclosure decree.

A bill in aid of ejectment proceedings cannot be converted into a foreclosure bill by merely substituting the ordinary prayer for foreclosure in place of the prayer originally made.

A mortgagee is not entitled as such to bring ejectment, and cannot maintain a foreclosure bill as a proceeding auxiliary to the ejectment suit.

It is very much within the discretion of a trial court to allow a bill to be amended at the final hearing on the pleadings and evidence; and where the amendment would transfer the case to a different head of equity jurisdiction, a dismissal of the bill without prejudice will not be reviewed unless the refusal to allow the amendment was clearly error.

An amendment to a bill in equity proposed on the final hearing with the design of introducing or substituting a new controversy in principle, will generally be refused. Bills of discovery have in some cases been made bills for relief at an earlier stage of the suit.

48 MICH.—17.

A bill filed and resisted as merely auxiliary to an action at law cannot be converted by amendment on final hearing, into a bill for complete and independent relief under another branch of equity.

Appeal from Montcalm. Submitted January 15. Decided April 7.

BILL to restrain defendant in ejectment from interposing his legal title as a defense. Dismissed. Complainant appeals.

*Mitchel & Pratt* for complainant. Amendments may be made on the hearing if not inconsistent with the case and if justice will be advanced thereby, 1 Barb. Ch. Pr. 215; or if germane to the suit or explanatory, *Slater v. Breese* 36 Mich. 89; *Munch v. Shabel* 37 Mich. 166.

*Wm. O. Webster* for defendants. A bill framed for one purpose will not generally be allowed to sustain a different relief than it prays, 1 Dan. Ch. Pr. 383, n; 1 Hoffm. Ch. Pr. 49, n.; *Wilkin v. Wilkin* 1 Johns. Ch. 111; *Rochester v. Anderson* Litt. Sel. Cas. 146; a complainant cannot allege inconsistent facts and ask alternative relief, Story's Eq. Pl. §§ 42 a, 42 b; Mitf. Eq. Pl. 38; *Colton v. Ross* 2 Paige Ch. 327; *Lloyd v. Brewster* 4 Paige Ch. 537; foreclosure cannot be had on a bill which does not allege that no proceedings are pending at law, *North River Bank v. Rogers* 8 Paige 648; *Lovett v. Reformed Church* 12 Barb. 67.

GRAVES, J. Livingston sued Hayes in ejectment and was allowed to recover on the strength of an estoppel *in pais*. Hayes brought error, and it was determined that the plaintiff in ejectment could not found his title on mere equitable estoppel and shut out the legal paper title of the defendant, and the judgment was reversed and the case remanded for a new trial. *Hayes v. Livingston* 34 Mich. 384. The opinion contains a plain statement of the substantial facts. Still, a present glance at the controversy will be convenient. Hayes became

grantee of the premises in September, 1866, and went into possession, and subsequently to that time has continuously occupied them as his homestead. He gave his note and mortgage for $920, with interest at eight per cent from April 1, 1867. The principal was divided into five annual instalments, each for $200 except the last, and the first being provided to be paid on April 1, 1868. June 9, 1870 he gave his note and mortgage on the premises, in which his wife Adeline joined, to one Charles A. Corey for $470 payable in three years with annual interest at ten per cent.

Measures had been taken in 1868 to foreclose the first mortgage by publication, and in November of that year the sheriff had sold and deeded to Ezra L. Koon.

In May, 1873, Corey obtained a quitclaim deed from this gentleman, together with an assignment of the old mortgage, and in November, 1873, gave a warranty deed to Livingston. It turned out that the proceedings to foreclose were invalid. Livingston contended on the trial of the ejectment, and has since maintained, that Corey, in dealing with Koon and in selling to him, Livingston, acted in strict compliance with an arrangement expressly made with Hayes by which he, Corey, was to buy the title and interest which accrued from the foreclosure proceedings, and then, on finding a proper purchaser, to convey the premises, and from the proceeds reserve the amount called for by his mortgage of $470, together with the expense incurred in acquiring the foreclosure title, and pay over the remainder to Hayes; and that he and Corey called on Hayes and consulted him before he, Livingston, concluded the purchase from Corey, and that Hayes then held out to him and expressly stated that Corey could grant the premises to him, and that he, Hayes, in case that should be done, would give up possession the next spring. Hayes disputed this representation of the facts, and insisted that Corey, in dealing with Koon, did so for his benefit, and that the amount necessarily expended was to be a mere loan to be repaid with interest.

On the remand of the ejectment suit for a new trial it seems to have been thought by counsel that the obstacle to recovery in that action might be obviated by recourse to a court of equity, and that on an exhibition of the facts that tribunal, in the exercise of its mere auxiliary jurisdiction, would regard Hayes' assertion of his legal title, and his setting up defects in that granted by Corey, as against conscience; and would, in aid of a fair trial of the ejectment, restrain him from insisting on the invalidity of the title conveyed by Corey, and compel him to release his own. Fonb. B. 1 ch. 1 § 3; Mitf. Pl. 134 marg.; 2 Story Eq. §§ 903, 904; 2 Dan. Ch. Pr. 1660; Hill on Inj. ch. 6 § 15.

The view adopted was that the action at law to obtain possession was the fundamental proceeding and not to be waived or superseded, and that the aid of equity should be sought, not as a separate independent remedy for final redress, but as a means to render according to its peculiar jurisdiction and ability, that incidental assistance to the court of law which would enable it to reach a result not otherwise attainable. The proceeding was contemplated as one to merely prepare for the next trial at law, and was not thought of as an independent expedient to decide the whole controversy upon a new ground. Following this theory, the plaintiff in ejectment kept that action on foot and filed this bill under oath. He framed it as one exclusively in aid of his action at law, and grounded it entirely on the assistant jurisdiction of the court. It was not so shaped as to conform to any other principle. It did not show expressly or by necessary intendment that Livingston was the holder of any mortgage, either legal or equitable, or that Hayes and wife, or either of them, held property subject to any incumbrance of his. Neither did it contain the fact which the statute says must be inserted in all foreclosure bills, as to whether there had been proceedings at law to make collection, etc. Comp. L. § 5151.

There were plain implications from references that the mortgages were accompanied by personal obligations,

but no explanation was suggested as to their custody or ownership, or as to where they were, and no account whatever is given of them in the case. There is nothing in the record to prove they remain on foot. *Bailey v. Gould* Walk. Ch. 478; *Bassett v. Hathaway* 9 Mich. 28; *Young v. McKee* 13 Mich. 552; *Hungerford v. Smith* 34 Mich. 300.

Everything like an averment that the foreclosure at law was invalid was carefully avoided, and complainant satisfied himself by setting up merely that the court had ordered a new trial in the ejectment cause "on the grounds that the legal title to said premises was still in said Martin Hayes, and that the equities of your orator could not be litigated at law." The bill did not admit, much less allege, that anybody was impleaded in character of owner of the equity of redemption. The structure of the pleading, no less than the entire theory of the case, was against any such interpretation. The prayer was that defendants should be compelled to release their title to the complainant, and that defendant Martin Hayes should be restrained from setting up his legal title as defense in the ejectment suit, and that such other and further relief should be allowed as should be found proper. If some part of this prayer is considered not consistent with a proceeding merely auxiliary to the ejectment, it is of no importance. The scope of the case is not enlarged nor the limited jurisdiction altered. *Lewis v. Campau* 14 Mich. 458.

The defendants answered the bill as one simply in aid of the ejectment, and both parties produced their evidence and conducted the case down to the time of hearing, under the assumption that it was only what it appeared.

At the January term of the court below for 1878 the case was formally submitted, and complainant then waived all relief through estoppel. In the following April the cause was argued, and the complainant thereupon, dispensing with his special prayer for relief, moved the

court to grant under the general prayer, an ordinary decree of foreclosure of the two mortgages mentioned in the bill, for such amount as (according to the language of the record) was conceded to be due and unpaid.

The argument being closed, the circuit judge held the case under advisement until a future day, and then orally announced his decision to dismiss the bill. But before any decree was settled the complainant petitioned for an amendment of the bill by substituting, in lieu of the original prayer, a prayer for foreclosure and sale in the form ordinarily used in foreclosure cases. Thereupon counsel were heard again, and upon consideration the judge overruled the petition and made a decree dismissing the bill without prejudice. The complainant appealed. Is he entitled to a reversal of the ruling of the circuit court, and to a decree here of foreclosure and sale? No advantage need be taken of the inaccuracies, of which there are several found in the bill, nor any question be made in regard to the effect of omitting to crave amendment before the case was given to the court after argument on the merits.

The motion for a decree of foreclosure on the case originally made by the bill was plainly untenable. There was no basis for such a judgment. The decree ought to flow regularly from the case pleaded; but this bill had neither the form nor substance to lead to a decree of foreclosure. The rule which requires a sensible correspondence in proceedings, and that the judgment shall follow the allegations, is too well understood to excuse comment in so clear a case. *Thayer v. Lane* Walk. Ch. 200; *Bellamy v. Sabine* 2 Phil. 425, 448; *Crocket v. Lee* 7 Wheat. 522; *Hayward v. National Bank* 96 U. S. 611.

At this point another matter is suggested. The proposition for a decree of foreclosure, whether based on the bill as framed, or on it as it would be if amended by the introduction of the prayer petitioned for, must be equally subject to a peculiar consideration not to be dis-

regarded.  As already shown, the case was commenced and cognizance taken of it by the court as being one merely auxiliary to the action at law and exclusively designed to help the plaintiff therein to get possession by means of that action.  The litigation has been governed throughout by this principle.  Now the plaintiff and complainant, electing to keep his action of ejectment on foot, still insists on transforming this equity proceeding, thus dependent and wholly subsidiary, not only into a suit for new and plenary relief, but into one conveying a positive denial of all right to have and maintain the ejectment—the principal case itself; and by necessary consequence conveying also an impeachment of the very ground of the proceeding immediately in question.

If complainant's right is that of *mortgagee*, then, in view of the transactions as he represents them, where is there any foundation, *first*, for his action of ejectment, and *second*, for this bill as a proceeding to aid it and based on the strength of it?  If the principal case is admitted to be untenable, what foundation is there for a case instituted merely to assist it?

Would it be regular or consistent practice, on reaching the final hearing on the merits, not only to change the incidental and dependent case to an original and independent remedy, but to do so, moreover, in flat contradiction of the main case, and while maintaining in theory and fact the pendency of that case?  It seems to me that the contradictions and inconsistencies involved in the course contended for were sufficient to justify the ruling objected to.

The question of allowing the bill to be amended at the final hearing of the cause on the pleadings and evidence is one subject very much to the discretion of the court; and where the amendment sought would transfer the cause to a different head of equity, and the court refuses permission and dismisses the bill, as in this instance, without prejudice, an appellate court will decline

to disturb the result unless, in view of all the circumstances, the impropriety of the refusal is conspicuous. *Darnley v. London, Chatham etc. Ry. Co.* 1 De G. J. & S. 204 219; *Budding v. Murdoch* 1 Ch. D. 42; *King v. Corke* 1. Ch. D. 57. And in case the change so moved for contemplates the introduction or substitution of a new controversy in principle, it is the general rule to disallow it. *Watts v. Hyde* 2 Phil. 406; *Palk v. Clinton* 12 Ves. 62. But short of this there is great liberality (Story Eq. Pl. §§ 892, 893, 904), and in some very peculiar cases the court will deem it just and politic to deviate from the general rule, and will allow the complainant, on fair and equitable terms, to revise his bill and give it a new bearing. *The Tremolo Patent* 23 Wall. 518. But no authority has been found for permitting him, at this stage of the case, to convert a bill filed and resisted as one merely auxiliary to a case at law, into a suit for full and independent relief under another head of equity.

A few cases are found where bills of discovery have been allowed under peculiar circumstances to be turned into bills for relief. But in every instance the change was sought and granted at a much earlier stage.

Had the complainant in the present case proposed to remodel his bill so far as to give it the necessary requisites of a foreclosure bill, this court, in view of the facts, would not have revised the action of the circuit court in refusing and dismissing without prejudice. But the amendment asked for here would not, if granted, have made the bill sufficient in form or substance. The request was to insert a prayer for foreclosure and sale. No other requisites were proposed to be supplied, and the effect of the introduction of the new prayer would have been to render the bill multifarious and inconsistent with itself and demurrable. It would have lost its primary character as a bill in aid of the suit brought at law to recover possession on the strength of legal ownership, without acquiring that of a bill alleging the plaintiff in ejectment to be a mere mortgagee, and constituting a bill of fore-

closure. It would still have been bad and insufficient to found a decree of foreclosure. From whatever quarter the matter is viewed the result is the same. The case actually laid by the bill was abandoned. The complainant turned from it and urged another, and we cannot consent to set aside his election and go back to that state of the litigation from which he withdrew the circuit judge, and in respect to which therefore no consideration was given. It would be not only irregular to do so, but unjust.

The decree should be affirmed with costs.

The other Justices concurred.