EBERLE v. HEATON.

124    205
s82NW 820
129   ²198

1. EQUITY—BILL—ALTERNATIVE PRAYER—MULTIFARIOUSNESS.

A bill praying for the correction of a mistake in a written party-wall agreement so as to accord with the understanding of the parties who executed it, fixing the center of the wall as the boundary between their respective premises, is not rendered multifarious by an amendment adding, as an alternative prayer, that the written agreement be annulled and the center line of such wall be declared to be the boundary. line, since in either case the rights of the parties are sought to be declared in the same terms.

2. SAME—PARTY-WALL AGREEMENT—MISTAKE—REFORMATION—DEFENSES.

Where the owners of adjacent lots, who have occupied the same for 20 years upon the assumption that the line between their respective buildings is the true boundary line of their premises, enter into a parol agreement (one of them, a nonresident, acting by an attorney-in fact) for the maintenance of a party wall, establishing thereby a boundary line slightly more favorable to the nonresident owner than the one theretofore recognized, which agreement, when reduced to writing and executed by the resident owner and such attorney-in-fact after the erection of the wall in accordance with the parol agreement, mistakenly describes a line still more favorable to the nonresident, the latter cannot complain of a decree making the writing conform to the parol agreement, on the ground that the attorney's authority was in fact limited to the execution of the agreement as written.

3. SAME—NEGLIGENCE.

Negligence in the execution of a written contract will not bar relief therefrom in equity on the ground of mistake, where the other party has done nothing to his prejudice in reliance on the terms of the writing.

Appeal from Jackson; Peck, J. Submitted May 1, 1900. Decided May 15, 1900.

Bill by Carl Eberle and Sophie Eberle against Rufus Heaton to restrain the prosecution of an action of eject-

ment and for other relief.    From a decree for complainants, defendant appeals.    Affirmed.

*John W. Miner* ( *Grove H. Wolcott*, of counsel ), for complainants.

*Blair, Smith & Townsend*, for defendant.

MONTGOMERY, C. J.   The bill in this case was filed to correct a mistake in a party-wall agreement, and to restrain the further prosecution of an ejectment suit brought against the grantee of complainants.    The testimony on the hearing disclosed the following facts : Prior and up to the fall of 1893 the complainants (who are husband and wife) and the defendant owned adjoining parcels of land on the south side of East Main street in the city of Jackson. The complainants' premises lay just east of the defendant's.    By the descriptions in their respective deeds the complainants' lot had a frontage on Main street of 18 feet, and the defendant's of 15 feet.    The front portions of both parcels were covered by old wooden buildings, which directly adjoined each other, and had been occupied for business purposes for more than 20 years.    During all of that period each party and their grantors had possessed and occupied these buildings as their property without question or dispute as to the division line, and as though the line between these buildings was the true division line between their respective premises.    In the fall of 1893 the complainants determined to join with one Neesley, who owned the lot next east of theirs, in building a modern brick building covering substantially both of their lots, and having a united frontage on Main street of about 46 feet.    They tore down the old wooden buildings on the premises, and began excavating for the foundation walls.

The defendant resided at Rouse's Point, N. Y., and left his property in general charge of his nephew, Frank Heaton, who resided in Jackson, and was defendant's agent for the purpose of collecting the rents, making repairs, and overseeing this with defendant's other real

estate in Jackson. When the complainants began to make excavations and lay in said concrete and foundation, said Frank Heaton, who was about the premises overlooking the matter for the defendant, thought that complainants were crowding the foundation and wall over on defendant's land, and forbade Mr. Lake, one of the contractors, from proceeding further with the work until the matter should be definitely understood. Mr. Lake, an experienced contractor, suggested that the parties make a party wall of it, and make a mutual agreement covering the subject, to which both Frank Heaton and the complainants assented, and such an agreement was orally made by Frank Heaton and Mr. Lake, acting for complainants, by which it was provided, among other things, that the wall should be a party wall, having its center on the line then determined upon, and marked by a nail driven in the sidewalk. This nail was to be, and actually was, 14 feet and 7½ inches east from the east wall of Bennett's building, located on the lot next west of the defendant's. It was understood between Frank Heaton and the complainants that the oral agreement thus made should be put into the form of a written contract to be signed and executed by the parties. The complainants, however, did not wait for this to be done, but proceeded with the work of construction, and located the wall with its center at the point and on the line so agreed upon. This oral agreement was made some time in October, and, before any written agreement with reference to tho party wall was executed, the complainants and Neesley had completed the brick building. On the 7th day of November, 1893, a written contract was prepared by Judge Lewis M. Powell, which was finally executed by complainants and defendant, by Frank Heaton, his attorney-in-fact, on the 26th day of February, 1894. This contract located the west line of the party wall "fourteen feet seven and one-half inches easterly, by the line of Main street, from the east side of the brick wall of the adjoining building, owned by Charles E. Bennett."

So far we have taken our statement from the brief of defendant's counsel, from which it clearly appears: *First,* that there was an oral agreement that the center line of the division wall was to be 14 feet 7½ inches from the east side of the Bennett building; *second,* that it in fact was so placed; *third,* that, after it was so placed, the party-wall agreement was executed, which did not accord with the parol agreement.

The testimony of the county surveyor establishes the fact that the division line as fixed by actual occupancy for more than the statutory period was still less favorable to the defendant than the parol agreement and actual location of the wall, and that by the parol agreement the defendant actually gained 3½ inches, and that, if the written contract is to stand, he will gain about 13½ inches. We are also convinced that the complainants and defendant's agent understood, at the time of the execution of the written agreement, that it did not fix the boundary line different than it had been fixed by the oral agreement and actual location of the wall.

At the close of the testimony, complainants were permitted to amend their bill by adding an alternative prayer as follows:

"Or that the defendant be perpetually enjoined from maintaining the said ejectment suit, and that he be required to pay to complainants one-half the cost of such wall within a reasonable time, and that the center of such wall be declared to be the boundary line between the lands of said defendant and said William Breitmayer, and that the said written agreement be set aside and annulled."

The circuit judge granted the relief prayed, and defendant appeals.

Defendant contends that by the amendment to the bill it was made multifarious. It is conceded that a bill may have a double aspect and an alternative prayer if the two prayers are not inconsistent, but it is claimed that these prayers are inconsistent. We do not think

the cases cited[1] are controlling, and we do not dis-
cover any inconsistency in the prayers. Both the orig-
inal bill and the amended prayer prayed for an injunc-
tion restraining the prosecution of the suit in ejectment,
and prayed that the center line of the wall be declared
the boundary line between the two properties. It is
true, the original prayer was for a reformation of the
instrument, and the amended prayer asks that it be set
aside; but in either case it is asked that the legal rights of
the parties to the property be declared in the same terms.
The amendment was probably intended to meet a possible
difficulty arising out of want of authority in the agent to
execute any other than the agreement actually signed.

On the merits the equities are very clearly with the
complainants. It is manifest that complainants did not
intend to grant away the partition wall already con-
structed, nor did the agent of defendant understand that
his principal was acquiring it.

It is contended that complainants are not entitled to
relief, because they failed to ascertain the authority of
defendant's agent, which was in fact limited to the execu-
tion of the instrument as written. The complainants may
have taken the risk of the agent's authority, but in doing
so they did not bind themselves to an undertaking to
which they never intelligently assented, unless they are
guilty of such culpable negligence as debars them, or are
estopped by their conduct. We are satisfied that com-
plainants should not be held barred by their negligence,
inasmuch as no action by defendant with reference to the
possession of this land has been induced by their laches.
2 Pom. Eq. Jur. § 856. Nor is there any element of
estoppel. The defendant has parted with nothing on the
strength of complainants' mistake. Id. § 870. If the
agreement were wholly canceled, the rights of the parties
would be determined by their previous undisputed occu-

[1] Viz.: *Shields* v. *Barrow*, 17 How. 130; *Livingston* v. *Hayes*, 43
Mich. 129 (5 N. W. 78); *Schafberg* v. *Schafberg*, 52 Mich. 429 (18
N. W. 202); *Ogden* v. *Moore*, 95 Mich. 290 (54 N. W. 899).

124 MICH.—14.

pancy and the verbal agreement, and the rights accorded by the decree are only those to which the complainants are entitled.

The decree is sufficiently favorable to defendant, and is affirmed, with costs.

The other Justices concurred.