## HUGH HALEY AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MICHAEL HALEY, DECEASED v. SHARON TOWNSHIP MUTUAL FIRE INSURANCE COMPANY.[1]

November 19, 1920.

No. 21,854.

**Witness — conversation between decedent and insurance agent.**

1. Section 8378, G. S. 1913, does not disqualify a member and agent of a township mutual fire insurance company from testifying to a conversation had with the insured when he took an application for insurance, because the insured was dead at the time of the trial of an action brought on the policy issued on such application.

**Fire insurance — retention of policy not proof of change of contract as to premises insured.**

2. The delivery of the policy to the insured and his retention of it is not conclusive evidence that after the application was made and accepted the parties agreed to modify their original contract so as to cover property described in the policy instead of that described in the application.

**Reformation of policy because of writer's mistake.**

3. The evidence justified the court in finding that the policy did not express the actual agreement of the parties, and that its failure so to do was the result of the mistake of the secretary of the company in writing the policy. Such a mistake is sufficient ground for a reformation of the policy at the suit of the company.

**Reformation of policy not prevented by negligence of defendant's officer.**

4. The negligence of the secretary in writing the policy so that it did not correctly express the actual agreement of the parties was not a bar to the right of the company to have the policy reformed.

Action in the district court for Le Sueur county to recover $600 upon defendant's insurance policy. The case was tried before Tifft, J., who made findings and dismissed the complaint on the merits. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

[1] Reported in 179 N. W. 895.

*Moonan & Moonan,* for appellant.

*W. H. Leeman,* for respondent.

LEES, C.

Plaintiff appeals from an order denying a new trial of an action brought to recover on a fire insurance policy.

The case was tried by the court without a jury and the findings were that, on October 11, 1911, one Michael Haley applied in writing to the defendant for fire insurance on his dwelling house to the amount of $900, and on the contents of the house to the amount of $600. The application was approved and a policy issued and delivered to Haley. It was not written in accordance with the application, in that it did not cover the contents of the house, containing instead a clause reading: "$600 on frame barn No. 1 with shingle roof." The insertion of this clause was due to the mistake of defendant's secretary, who wrote "$600" one space below the line on the printed form where it should have been written to cover the contents of the house. It was specifically found that it was not Haley's intention to have his barn insured nor the intention of defendant to insure it.

On May 13, 1915, the barn was totally destroyed by fire. Defendant refused to adjust the loss on the ground that there was no insurance on the building, and, Haley having died and plaintiff having been appointed special administrator of his estate, this action was begun to recover on the policy.

In its answer defendant asked for the reformation of the policy to conform to the application. The court found that it was entitled to reformation, but that it was not necessary inasmuch as the policy had expired, and ordered a dismissal of the action on the merits.

The application was taken by one McCarthy, who was a policy holder in and agent of the company, which is a township mutual company securing funds to pay losses by making assessments on all its members. McCarthy testified that he inquired about the barn and Haley said "the barn was an old log barn and it wasn't worth insuring," and that he positively refused to take insurance on it.

1. Plaintiff's first point is that McCarthy was not a competent witness to testify to the conversation with Haley because, being a member of de-

fendant and liable to assessment, he was interested in the event of the action within the meaning of section 8378, G. S. 1913. In our opinion this question is disposed of adversely to plaintiff's contention by Bost v. Supreme Council Royal Arcanum, 87 Minn. 417, 92 N. W. 337, and Havlicek v. Western Bohemian Fraternal Assn. 138 Minn. 62, 163 N. W. 985.

2. Plaintiff's principal contention is that neither the evidence nor the findings sustain the conclusions of law. He asserts that the policy, and not the application, was the contract between the parties. As written, the policy covered the barn. It was delivered to and accepted by the insured. When it was delivered he had the option of accepting or rejecting it. He is to be charged with notice of its contents, therefore it must be presumed that he assented to the change of insurance to cover his barn instead of the contents of his house. And finally, if there was a mistake in writing the policy, it was not a mutual mistake, but was due solely to defendant's own negligence, and hence it was not entitled to have the policy reformed.

Counsel refer to the rule that where there is no application the insured is bound by the conditions of a policy which he has accepted and retained without objection. McFarland v. St. Paul F. & M. Ins. Co. 46 Minn. 519, 49 N. W. 253; Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106 N. W. 485, 4 L.R.A.(N.S.) 231, 7 Ann. Cas. 1144; Wierengo v. Am. Fire Ins. Co. 98 Mich. 621, 57 N. W. 833. In the present case there was an application and the policy was not written in accordance therewith, so it is doubtful if the rule is applicable. Moreover, it was not the intention of the insurer to cover the barn, nor of the insured to give up the insurance on the contents of his house, for which he had applied, and substitute insurance on the barn. There never was a meeting of the minds of the parties upon that particular term of the contract of insurance as written in the policy, and hence no contract to insure the barn was ever made. At most the delivery and retention of the policy may be regarded as some evidence that after the application was made and accepted the parties agreed to modify their original contract, but the court was not bound to give much weight to the circumstance, and, standing alone, it was not sufficient to require a finding that the true agreement was expressed in the policy. It is a matter of common knowledge that the aver-

age person rarely reads his fire insurance policies except in the most cursory manner. Haley was an old man, not engaged in business, and would be quite apt to put his policy away without reading it or knowing that it was not written in accordance with the application, hence the inference that he changed his mind after he received the policy and decided to take insurance on the barn is weak. Norman v. Kelso F. M. F. Ins. Co. 114 Minn. 49, 130 N. W. 13. Of course something more than a preponderance of evidence is required to justify a reformation, but the application is persuasive proof of the mistake, and "there is less difficulty, in reforming written instruments where the mistake is mainly or wholly made out by other preliminary written instruments or memoranda of the agreement." 1 Story, Eq. Jur. § 232.

3. The mistake was mutual because insurance of the barn was contrary to the intention of both parties. Guernsey v. American Ins. Co. 17 Minn. 83 (104). There is an additional reason why plaintiff cannot sustain the position that defendant was not entitled to reformation because the mistake was not mutual:

"Parties to an agreement may be mistaken as to some material fact connected therewith, which formed the consideration thereof or inducement thereto, on the one side or the other; or they may simply make a mistake in reducing their agreement to writing. In the former case, before the agreement can be reformed, it must be shown that the mistake is one of fact, and mutual; in the latter case it may be a mistake of the draftsman, or one party only. * * * Equity interferes, in such a case, to compel the parties to execute the agreement which they have actually made."

Pitcher v. Hennessey, 48 N. Y. 415. See also Hunt v. Rousmaniere's Admr. 1 Pet. 1; 1 Story, Eq. Jur. § 205; 34 Cyc. 910; 20 Am. & Eng. Enc. (2d ed.) 823.

4. The mistake in the policy was due to the carelessness of defendant's secretary. In Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705, the test of the right to reformation at the suit of one guilty of negligence was said to be whether it would be just to change the situation, especially if the change might injuriously affect the rights of innocent third parties. In Collignon v. Collignon, 52 N. J. Eq. 516, 28 Atl. 794, it was observed that:

"There are many cases in which the court has said that equity will not relieve against a mistake resulting from the complaining party's own negligence. In most of the cases this was a declaration not subject to criticism with reference to the facts under determination, but it is not to be accepted as a canon of universal application. Professor Pomeroy, in 2 Pom. Eq. Jur. § 856, and notes, vigorously disputes the correctness of any such contention."

The author referred to makes the following statement in volume 2 (4th ed.) p. 1749:

"The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty."

See also Perkins v. Kirby, 39 R. I. 343, 97 Atl. 884; Taylor v. Godfrey, 62 W. Va. 677, 59 S. E. 631; Eberle v. Heaton, 124 Mich. 205, 82 N. W. 820; Bank of Union v. Redwine, 171 N. C. 559, 88 S. E. 878. Mistakes in reducing the terms of an agreement to writing are generally due to the carelessness of the scrivener, and there are no cases holding that his negligence is to be attributed to either party to the agreement. Defendant's secretary was its agent to prepare the policy. He was not a party to the contract. His failure to follow the application in writing the policy should be and is ground for a reformation. Mahoney v. Minnesota F. M. Ins. Co. 136 Minn. 34, 161 N. W. 217; Sundin v. County Fire Ins. Co. 144 Minn. 100, 174 N. W. 729. If the household goods instead of the barn had burned and plaintiff had brought an action to reform the policy and recover on it when reformed, there would be little doubt of his right to prevail. Conversely, as it seems to us, the insurer ought to have a right to show that its agreement was to insure the household goods and not the barn and to have the policy reformed to correspond with the contract actually agreed upon.

The evidence was ample to justify the trial court in finding that there was a mistake; that the true agreement was not expressed in the policy; that it was the mutual intention of the parties to insure the household goods and not the barn, and that the acts of the parties after the policy was issued did not show that they intended to substitute insurance on the barn for insurance on the household goods. The order denying a new trial is, therefore, affirmed.