ANDREW NOREM, Appellant, v. IOWA IMPLEMENT MUTUAL INSURANCE ASSOCIATION, Appellee.

INSURANCE: Reformation of Policy—Mistake of Law. A policy of insurance which is payable solely to the holder of the legal title will, in the absence of fraud, be so reformed as to be payable to the holders of the legal *and equitable* title, when such was the intention of the equitable title holder and the agent; and this is true even though the equitable title holder and the agent made the mistake of law of believing that a policy payable to the legal title holder only would *legally* protect both the legal and the equitable title holder.

*Appeal from Wright District Court.*—E. M. McCALL, Judge.

NOVEMBER 20, 1923.

ACTION in equity, to reform a fire insurance policy. The opinion fully states the facts. Judgment dismissing plaintiff's petition, and he appeals.—*Reversed and remanded.*

*W. E. Bullard* and *Sylvester Flynn,* for appellant.

*Charles H. Hall,* for appellee.

STEVENS, J.—I.  The policy in suit was issued on July 1, 1921, by the Iowa Implement Mutual Insurance Association, appellee herein, to James Kenefick.  The property covered thereby was a dwelling house, situated upon a small tract of land in Belmond, Iowa.  It was identical with a policy issued a year previous, to the same party, covering the same property, except that the former policy was for $1,000, and the present policy is for $2,000.  Both policies were issued at the request of appellant, and not of Kenefick, and both premiums were paid by him.  Appellant, on February 28, 1919, purchased from Kenefick the dwelling and grounds on which it stood, under a contract for a deed, for a consideration of $800, $500 of which was paid in cash,—the balance to be paid in installments.  The property was destroyed by fire, December 2, 1921.  At the time of the fire, appellant still owed Kenefick $290.32 of the purchase price.  After the fire, the company's adjuster visited Belmond, inspected the loss, and learned for the first time that the only interest Kenefick had in the property was the unpaid balance of the purchase price, and that appellant had the equitable title. The company paid Kenefick the unpaid balance, but has at all times refused to pay any portion of the loss suffered by appellant.  The court below refused reformation, and dismissed the petition.

The request for insurance was made by appellant to W. H. Purdy, the local soliciting agent of the company.  As we understand the record, an application purporting to have been signed by Kenefick was forwarded to appellee by its agent, but it is conceded that Kenefick neither requested the insurance, signed an application therefor, nor paid any part of the premium. Appellee's agent, as a witness in its behalf, admitted that he knew something of appellant's interest in the property, but testified that he did not know the exact interest of the parties therein.  Other testimony, including that of appellant, satisfies us that Purdy knew that Kenefick had sold the property to appellant, upon a contract for a deed, to be executed upon performance of the terms of the contract.  The testimony of appellant upon this point is fully corroborated by Kenefick.  The second policy was for double the amount of the preceding one. The increase was requested by appellant upon the theory that

building material had greatly increased in value. Upon receipt of the policies by appellant, he promptly delivered them to Kenefick, for whose benefit appellant had agreed to keep the property insured. Appellant testified that he informed Purdy fully as to the ownership of the property, and of his promise to keep it insured for the benefit of Kenefick, and that Purdy informed him that he would have the policy made out to the latter, as he held the legal title, and that by this means the insurance would inure to the benefit of both. Appellant further testified that, at the time the request was made for a second policy, he suggested to Purdy that it be made out to himself and Kenefick jointly, and that Purdy told him that that was unnecessary; that he knew, when he examined the policy, before he delivered it to Kenefick, that it was identical, except as to amount, with the former policy. Purdy did not remember the conversation as represented by appellant, denied parts of it, and testified that appellant told him he wanted the policy made out to Kenefick, and that he desired his name withheld therefrom. Appellant denies that he made the latter request of Purdy. D. M. Grove, an officer of appellee, testified that the officers of the company knew nothing of appellant's interest in the property, or that it was not owned absolutely by Kenefick. On June 24th, Purdy wrote Grove as follows:

"James Kenefick wants a new policy in the place of policy No. 30139, wants it to commence June 25, 1920, amount $2,000. He wants additional $1,000 for one year."

The policy in question was issued in response to this letter. The record is quite conclusive that appellee had no actual knowledge of appellant's interest in the property, or that Kenefick was not the owner thereof. The policy contained a mortgage clause in favor of Ernest Stadtlander, as his interest might appear. No such mortgage was on the property at the time the policy was issued, but a prior mortgage of that description thereon had been foreclosed.

Whatever diversity of opinion might exist as to the equitable or legal rights of appellant, if any, under the facts disclosed by the record, one proposition must be conceded; and that is that a full premium was paid for valid insurance upon the property described, in the sum of $2,000, and that both appel-

lant and those representing appellee intended the transaction consummated by the issuance of the policy to have that effect. Appellee could not be heard for a moment to declare to the contrary. Whatever difficulties the case may present, they do not arise in the form of doubts as to the real purpose and intention of the parties. This much their admissions and the very nature of the transaction render clear and conclusive. Is a court of equity, in such circumstances, powerless to grant such relief as will be necessary to carry out the mutual intention of the parties thus indubitably expressed?

All of the knowledge and information Purdy acquired at the time request was made by appellant for insurance was, under the familiar law of agency, imputed to appellee. *Wilson v. Anchor Fire Ins. Co.*, 143 Iowa 458; *Jamison v. State Ins. Co.*, 85 Iowa 229; *Fitchner & Co. v. Fidelity Mut. Fire Assn.*, 103 Iowa 276; *Cooper W. & B. Co. v. National B. F. Ins. Co.*, 188 Iowa 425; *State Mut. Ins. Co. v. Green*, 62 Okla. 214 (166 Pac. 105); *Gaskill v. Northern Assur. Co.*, 73 Wash. 668 (132 Pac. 643); *Lumbermen's Mut. Ins. Co. v. Bell*, 166 Ill. 400 (45 N. E. 130); *Deitz v. Providence Ins. Co.*, 31 W. Va. 851 (8 S. E. 616).

The situation at the time the policy was issued was, in legal effect, the same as though the transaction had been had directly with the officers of the company. It was the custom and practice of appellee to insure property the legal title to which was held by one party and the equitable title by another. On this point, Grove testified as follows:

"Q. Had he advised you of the fact that Mr. Norem had purchased this property from Mr. Kenefick, and would receive a deed when the balance of the purchase price was paid, you would then have attached a loss-payable clause to the policy, making it payable to James Kenefick and Andrew Norem, would you not? A. That is a custom of ours when we have due notice that anyone is interested in that way. It is not a mortgagee's clause. It is a loss-payable clause. Had our local agent supplied us with those facts, we would have attached that kind of a clause to the policy when issued, after due investigation. We would have issued it after we were satisfied,—after due investigation. If, after due investigation, we had been satisfied that the deal was all right in every way, and were satisfied with

Norem, as we were with Mr. Kenefick, we would probably have done that.  Q.  You would have attached that loss-payable clause, or other clause, so that both Kenefick and Norem would be fully protected in case of a loss on that property?  A.  We have policies out with those clauses.  That is the kind of a clause we would have issued in this case, if we had known the facts, and been satisfied after investigation.  As a usual thing, that clause would not have cost Mr. Norem anything additional.''

We are satisfied from the record that appellant fully disclosed the true ownership of the property to Purdy at the time request was made for the insurance.  Purdy inferentially admitted this to be true when he testified that appellant told him that he wanted the policy made to Kenefick, and that he did not want his name to appear thereon.  We are not inclined to infer that Purdy was guilty of bad faith, or that he intentionally neglected his duty to the company.  It is quite probable that he believed that the proper way to insure the property was to have a policy issue in the name of the holder of the legal title only.  If appellant is to be believed, this is the advice Purdy gave him.  The only reason the policy was not made payable to Kenefick and appellant as their interests should appear, as disclosed by Grove's testimony, was that the representatives of the company charged with the duty of issuing policies did not know the facts as they were revealed to the agent.  No additional charge would have been made for a clause attached to the policy making the loss payable to both Kenefick and appellant, as their interests might appear.

It is also quite generally held that, where a policy of insurance does not represent the intention of the parties solely because of some fault or negligence on the part of an agent of the company, equity will reform it so as to make it express such intention.  *Phenix Ins. Co. v. Ceaphus,* (Okla.) 151 Pac. 568; *Gregan v. Northwestern Ins. Co.,* 83 Ore. 278 (163 Pac. 588); *Palin v. Insurance Co.,* 92 Kans. 401 (140 Pac. 886); *Norman v. Kelso Farmers Mut. Fire Ins. Co.,* 114 Minn. 49 (130 N. W. 13); *Haley v. Sharon Twp. Mut. Fire Ins. Co.,* 147 Minn. 190 (179 N. W. 895); *Fitchner & Co. v. Fidelity Mut. Fire Assn.,* supra; *Jamison v. State Ins. Co.,* supra; *Carey v. Home Ins. Co.,* 97 Iowa 619.

Appellant testified that he relied upon appellee's agent to secure him a policy that would protect the property against loss. Notwithstanding the fact that the interest of Kenefick at no time exceeded $300, a policy for $2,000 was issued, and a premium was paid for insurance on that amount.

The insured may, generally at least, in taking out insurance rely upon the company to issue a policy payable to the proper person, and in a form to carry out its purpose. *Barnes v. Hekla Fire Ins. Co.,* 75 Iowa 11; *McComb v. Council Bluffs Ins. Co.,* 83 Iowa 247; *Fitchner v. Fidelity Mut. Fire Assn.,* supra.

The failure of appellee to issue a policy in such form as to protect the interests of appellant, as well as those of Kenefick, against loss was in no sense due to a mistake of law, nor is it chargeable to any fraud, concealment, or bad faith upon the part of appellant. Counsel in argument emphasizes the testimony of Purdy that appellant told him that he did not want his name to appear in the policy,—that he wanted it insured only in the name of Kenefick,—and urges this as such bad faith as to estop him. It is suggested that appellant had reasons for desiring to conceal his interest in the property from his creditors. The record does not sustain the contention of counsel.

Appellee was as much bound by the knowledge of Purdy as it would have been if the information had been imparted to its officers, instead of to its agent. No reason can be assigned for Purdy's failure to report the facts to his principal. The record disclosed nothing on the part of appellant indicating a purpose to deceive or defraud appellee. His disclosures were full and ample, and the issues must be disposed of upon the theory that the knowledge of the agent was imputed to the principal.

It is urged by appellee that courts of equity will not reform a written instrument because of a mistake of law, but only when a mutual mistake of fact is shown by clear, convincing, and satisfactory proof. The fact that appellant discovered, when he received the policy, that it was made payable only to Kenefick cannot, of course, in this connection, be ignored. He was not bound to examine the policy, and would not necessarily have been guilty of negligence if he had not done so. *Fitchner v. Fidelity Mut. Fire Assn.,* supra. If the letter written by Purdy

to the company quoted above contained the only information imparted to it, then clearly Purdy neglected to perform his full duty, both to the company and to appellant.  Assuming that Purdy acted in perfect good faith, the truth of appellant's testimony to the effect that Purdy informed him that it was sufficient to cover both interests if the policy was made payable to the holder of the legal title only, becomes quite probable.  We have no doubt that appellant believed that the policy, in the form in which it was written, insured his interest in the property against loss, and that such belief was the result of the conversations had with Purdy.  If appellant was mistaken as to his understanding of the law, it was as much the fault of appellee's agent as of himself; and the only reason a proper policy was not issued was because of the agent's failure to make proper disclosure of the facts to the company.  The mistake was as to a positive duty on the part of the company,—that is, to issue a policy in accordance with the intention of the parties.

There is no trouble in this case on the question of the burden of proof.  Permissible inferences from the undisputed testimony are convincing upon this point.  It seems to us that it is immaterial whether the policy be reformed so as to express what must be deemed the admitted intention of the parties or whether it be held that appellee cannot set up the neglect and failure of its own agent as a defense.  The result must necessarily be the same.  The policy in *Thomason v. Capital Ins. Co.*, 92 Iowa 72, was assigned, by mistake, to "D. M. T.," a nonexistent person, instead of to "M. C. T.," the party intended.  The action was in equity, to reform the contract.  The court said:

"It is urged that, even if there was a contract, it is not such an one as a court of equity will reform because the mistake is not mutual.  We think the mistake was mutual, in this: that both parties intended the insurance to be for the benefit of the owner of the property.  By a mere mistake of a name, not as to the person, under appellant's contention the policy issued to no one, and hence there was no insurance.  The company received its premium, and pretended to issue a valid policy.  If it knew the facts, and intended no insurance, it is too dishonest to be deserving of consideration in a court of equity.  If it was honest, it intended, by issuing the policy to D. M. Thomason,

to issue it to him as the owner of the property; and, if there was no D. M. Thomason, it had no intention as to such a person, and in reason its intention must have been as to the person for whom the name was mistakenly written. If so, the placing of a wrong name in the policy was a mistake against which a court of equity will grant relief.''

The duty of the court in this case would seem to be clear. The record is barren of evidence tending to convict appellant of bad faith or fraud in his transactions with Purdy. His knowledge of the insurance business and of the law governing same was, of course, meager, and he naturally relied upon the solicitor to whom he applied and upon the company to issue a valid policy. The evidence does not show that he desired his name withheld from the policy if its effect would be to invalidate the insurance. The company suffered no prejudice, and, as stated, the addition to the policy of a clause making the insurance payable jointly to Kenefick and appellant, as their interests might appear, was largely a matter of form. A court of equity is not powerless, under such circumstances, to give effect to the intention of the parties.

We hold that the policy should be reformed so as to give proper effect thereto. Appellant may have a decree in the court below so reforming the policy as to make the same payable to the respective parties as their interests may appear.

II. Judgment is asked upon the policy as reformed. The evidence as to the value of the property described is somewhat conflicting, but it is our opinion that the value is approximately $1,600. Judgment will be entered below for this amount, less the amount paid to Kenefick, with interest at 6 per cent. The judgment of the court below is reversed and cause remanded for decree in harmony with this opinion.—*Reversed and remanded.*

PRESTON, C. J., FAVILLE and DE GRAFF, JJ., concur.