HAROLD KNOTT et al., Executors, Appellees, v. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, Appellant.

No. 44896.

FEBRUARY 13, 1940.

REHEARING DENIED JUNE 20, 1940.

G. O. Hurley, Bennett Cullison, and G. C. Wyland, for appellees.

Joe W. Turner and Crofoot, Fraser, Connolly & Stryker, for appellant.

RICHARDS, J.—The plaintiff-executors seek to recover the face amount of a policy of insurance upon the life of their decedent. The beneficiary named was the insured's estate. The insurer was the National American Life Insurance Company, Burlington, Iowa. The liability of defendant, The Lincoln National Life Insurance Company, is predicated upon an agreement in which it assumed the policy. The whole controversy revolves about a specification in the policy to the effect that, in event of a default on account of nonpayment of an annual premium after the policy shall have been in force 14 years, the contract of insurance shall be automatically continued in force for its face amount for a period of 10 years and 10 months from and after the date of the payment of the last premium. The policy was dated September 20, 1918. The insured met all premium obligations up to the one that became due in advance on September 20, 1932, for the year beginning on that date. This premium insured failed to pay. When this default occurred the policy had been in force for 14 years. The insured died on April 3, 1937. Accordingly it was plaintiffs' claim that at the time of insured's death the contract of insurance upon her life was still in force.

The policy contained a table showing the guaranteed loan and surrender value of the policy at the end of each of 20 separate annual periods beginning with one and ending with

20 years from the date of the policy, as well as the respective terms for which the insurance would be automatically extended in event of a premium default, the months and years of such terms being set out, same depending on the length of time the policy had been in effect before the default. It is in this table that the policy specifies that the term of the automatic extension of the insurance is 10 years and 10 months in event of default in payment of premium at the end of 14 years. As a defense to these matters defendant pleaded that what the table sets out is not what the parties in fact agreed to, and in a cross-petition prayed that the policy be reformed by striking out the table it contains and by inserting in lieu thereof, as the real agreement of the parties, a table alleged to be appropriate to the issuing of a policy to an insured aged 53 years. The table defendant seeks to have inserted would show that the automatically extended insurance would continue for 7 years and 8 months in event of a premium default on September 20, 1932. But incidental to a calculation based on either table the record shows two things that shortened what otherwise would be the term of the extended insurance, (1) insured had been loaned $209.52 upon the policy, and (2) defendant's reinsurance agreement of date November 29, 1933, contained a provision that, ''In case of policies running under extended insurance, the term and/or amount of insurance shall be determined from the value of the extended insurance on June 3, 1933, less fifty per cent (50%) thereof.'' The result is that if the table appearing in the policy prevails the term of extended insurance had not expired at the time of the insured's death. But if that table be disregarded and the calculation be made to depend upon the table that defendant seeks to have inserted in the policy, then the decedent was uninsured under this policy when she died. The case was transferred to equity and tried on the merits. The district court found the equities were with plaintiffs, that the cross-petition should be dismissed, and that plaintiffs were entitled to the relief demanded. From a judgment and decree entered accordingly defendant has appealed.

Defendant argues that it successfully carried the burden of proving that what is set out in the policy with respect to extended insurance is not that to which the parties to the contract in fact agreed. On that question the only oral testimony defendant offered came from the witness Shinnick, one of defendant's actuaries. He related that in the late summer or fall of 1937, insured then being deceased, he compared the table that is in the policy with the table appearing in the insurer's rate book as appropriate to the issuing of a policy to an insured whose age is 53 years, and found that the two tables "did not agree." On cross-examination he stated that the table contained in the policy is essentially the same as the table contained in a preceding policy for $5,000 issued by insurer to insured when she was 45 years old. (To this earlier policy further reference will be found in a subsequent portion of this opinion.) Starting with an assumption that the insurer would not have issued a policy containing a table other than the one the rate book sets out as being appropriate, defendant urges that the necessary inference from the testimony of the witness Shinnick is that it was through error or inadvertence that the table appearing in the policy was made a part thereof.

To the assumption underlying this asserted inference defendant accords all of the reasonableness it might perhaps exhibit had the dealings between the parties been encompassed within a making by insured of an original application for insurance on an ordinary prescribed form and the insurer's routine issuing thereon of a new and original policy. Consistently with that attitude defendant cites numerous authorities including Hibbard v. North American Life Insurance Company, 192 Wis. 315, 212 N. W. 779; Kentucky Home Life Ins. Co. v. Kittinger, 262 Ky. 525, 90 S. W. 2d 673, 103 A. L. R. 1361; Haley v. Sharon Tp. Mut. Fire Ins. Co., 147 Minn. 190, 179 N. W. 895. But it was not such a suppositious transaction, primal and definite, that the parties were having in the instant case when they, particularly the insurer, were determining what were to be the terms of a remodeled contract, that was finally reduced to writing in the policy that is in suit.

Unlike the situations in cases defendant cites, on the record before us in the instant case defendant's assumption must be based if at all upon unusual and unchartered dealings the parties had preliminary to the writing of the contract that is sued on. What such dealings were is related in the following:

On September 12, 1910, the insured made to the same insurer National American Life Insurance Company, Burlington, Iowa, (then having another corporate name) a formal written application for insurance on her life in the amount of $5,000. The application stated that insured's age was 45 years and that the date of her birth was February 3, 1866. Upon that application insurer, on September 20, 1910, issued to insured a policy for $5,000 identified as Number 007968. This policy was in full force when, on July 21, 1924, the insured was approached by one Ehlen, a nonresident of Iowa, who was being employed by insurer to solicit its policyholders to surrender the policies they already held in exchange for policies to be substituted by insurer. On the date mentioned Ehlen prevailed upon insured to surrender her policy of September 20, 1910, and to sign a paper addressed to insurer the material portions of which were these:

"I herewith hand you my policy Number 007968, issued or assumed by your company and request that you issue in lieu thereof a non-participating standard provisions policy for $5,000.00 on the ordinary life preferred plan, dated September 20, 1918, at age 53 with premium credit in full to September 20, 1924, and with annual premiums thereafter of $212.40, said policy to recite fully every benefit to be received in connection therewith. The original policy and all benefits thereunder and indebtedness of $400.00 to be cancelled as a consideration for such substitution."

In lieu of the policy so surrendered the insurer mailed to insured on August 24, 1924, a policy on her life for $5,000 bearing date of September 20, 1918. This is the policy on which plaintiffs have sued.

■   In the foregoing, it is shown that the policy in suit was issued in August 1924 and that insured's age was then 59 years. With this in mind let us advert to defendant's assumption that the insurer in issuing the policy in suit would not have issued a policy containing a table other than the table the rate book set out as the appropriate one.  In the rate book the appropriateness of each table is determined by the age of the insured when the policy is issued.  So, stated concretely, the assumption is that insured would not have issued a policy containing any table other than the one appropriate to the age of 59 years.  Therefrom the only inference aiding defendant would be that there was error or inadvertence in that the table appropriate for 59 years fails to appear in the policy.  But such inference cannot be drawn.  One reason is that the actual facts negative the thing assumed.  Defendant affirms that it was knowingly and intentionally that the insured used a table other than the 59 years of age table.  So in fact no error or inadvertence is to be inferred from the fact the 59-year table does not appear in the policy.  The assumption avails nothing.

Although the authorities cited in its brief might point in another direction, defendant may not be seriously questioning the foregoing.  For in argument a contention stressed by defendant amounts to this—the insurer, and the insured also, intended to select some age other than the insured's actual age at the date of issuing the policy and then to incorporate in the policy the table appropriate to the selected age, in abandonment of the table the rate book indicated as the appropriate one to be used.  Defendant says the age selected was 53 years, and that through error and inadvertence the table appropriate to that age was not put into the policy.

But the evidence pertinent to this fact question is meager and circumstantial.  The substituting of the policy in suit for the original was solely insurer's project, not the insured's.  And it was a successful one in accomplishing for insurer the elimination from the original policy of these things—the $1,390 surrender or loan value, the $2,260 paid up insurance value, both amounts being already accrued up to September 20, 1924, and

terminated participation by insured in the company's earnings. The record does not make it entirely improbable that these things, and an increased annual premium to which further reference will be made, embrace all the changes in the original contract that were sought by the insurer, nor unreasonable to believe that insurer viewed the substituted policy as not unlike an original contract in which changes have been made by pen strokes through certain deleted portions. For the substituted policy was identified by insurer as the original policy insofar as according to it the original policy Number 007968 may be so interpreted. And the substituted policy retained the original table. It is significant in connection with the latter fact, that in another place in the policy, appropriate to the showing of insured's age, there was also retained in the substituted policy what appeared in the original, i. e., "age 45 years." A further somewhat related circumstance is this. If the changes insurer was seeking were those advantageous to itself it could well have viewed a change in the original table as not according with its purposes, in at least one respect, namely, under that table the loan and surrender values accumulated in less amounts than under the table defendant would now insert.

On the other hand insurer dated the policy back to September 20, 1918, and the amount of the annual premium was increased to $212.40 from the original premium of $173.80. The dating back and the fixing of the premium at $212.40 were consistent with and evidently called for in the paper insured signed in July 1924 contemplating issuance of a policy, "dated Sept. 20, 1918, at age 53, with premium credited in full to Sept. 20, 1924, and with annual premiums thereafter of $212.40." Plaintiffs contend that nothing more was called for in what we have quoted; that the matter of premiums is the whole intendment that can be fairly accorded, and that the policy shows the parties so understood. However that may be, the policy later executed is conclusive as to what was the contract, in the absence of mistake or fraud, and the probative force of the prior July writing goes no further than the extent to which it may tend to prove there was a mistake. Banwart

v. Shullenburg, 190 Iowa 418, 180 N. W. 190. Aside from drawing inferences from circumstances there was no manner in which the trial court could have decided the question that was presented. The witness Shinnick was devoid of any personal knowledge as to what the contract was in fact. The content of his testimony could have been conveyed to the court in his absence, by handing to the court for making the same comparisons the rate book and the policies. No other person, connected with either the insurer or the defendant company has testified. It is admitted that all the records of the insurer are in defendant's possession. But no showing was attempted relative to what may be in these records bearing on the question whether the leaving the old table in the substituted policy was one of the factors in the insurer's calculations out of which resulted among other things a credit of $89 due insured. Nor is there any showing that such records if produced would not throw light on the question.

Without attempting to recite all of the details, such was the record. No inequitable conduct on part of insured tends to aid defendant. The policy itself was out of her hands. and in insurer's or defendant's possession from February 1932 until she died. Possibilities either way there may be. But a holding that defendant has established the probability of its theory that the instrument as written does not express the real agreement, and that this was the result of mutual mistake, does not appear to be warranted. The reason is that a court of equity will reform a written instrument (and reformation is all the relief defendant could ask) only when it finds itself moved so to do by evidence that "clearly and satisfactorily show[s] such mutual mistake or other reason for the reformation of the instrument." Phillips v. McIlrath, 205 Iowa 1126, 1130, 217 N. W. 429, 430. Defendant's evidence is not of that force or character. The decree of the trial court is affirmed.— Affirmed.

HAMILTON, C. J., and HALE, OLIVER, BLISS, and SAGER, JJ, concur.